Knights of Pythias v. Germania Lodge, No. 50.

THE GRAND LODGE, KNIGHTS OF PYTHIAS OF
NEW JERSEY,

56    63
56    79
56    63
f57   502

*v.*

GERMANIA LODGE, No. 50, OTTO JANSEN et al.

[Filed August 21st, 1897.]

1. In suing the trustees of an unincorporated lodge, the lodge was joined as party defendant, although its disbandment had occurred, unknown to complainant, before the filing of the bill.—*Held*, that a motion by complainant to strike from the bill both the name of the lodge as a party defendant and also an allegation of the continued existence of such lodge should be granted.

2. An unincorporated subordinate lodge was organized under a charter granted by an incorporated grand lodge, which, in turn, was subordinate to a supreme lodge. The members of the subordinate lodge pledged themselves to act at all times in obedience to and in accordance with the enactments of the grand lodge, which enactments were bound by charter to be in conformity with the statutes of the supreme lodge. These supreme statutes provided that the receipts of a subordinate lodge "shall constitute a trust fund for carrying out the fraternal and beneficial features of the order. * * * This fund shall not be subject to partition among the members of the lodge, and in case a lodge shall for any cause cease to exist, this fund shall revert to the grand lodge within whose domain the lodge is located." The members of the subordinate lodge disbanded, first voting to pay the money in the treasury to a sick benefit society not connected with the order, and to which the lodge members belonged. The vote was carried into effect.—*Held*, a diversion of the trust funds. The trustees and those assisting in the actual disposition of the funds were jointly and severally liable to the grand lodge for the whole fund.

3. The charter of the grand lodge provided that it "shall and may at all times hereafter be capable in law of having, purchasing, holding and possessing any land, tenements, hereditaments and personal estate."—*Held*, that the title to moneys paid into the subordinate lodge vested at once in the grand lodge, and the officers of the subordinate lodge were merely custodians of the fund during the existence of the lodge.

4. Members of a subordinate lodge organized under a charter from a grand lodge, who have disbanded as a lodge, and deny their membership in the organization, and have forsaken the lodge property, are estopped from denying that the forfeiture of property held by the subordinate lodge, consequent upon the surrender of their charter, has taken place.

Heard on bill, answer and proofs.

This bill is filed by a corporation named the Grand Lodge, Knights of Pythias of New Jersey, duly incorporated by act of the legislature, March 29th, 1871 (*P. L. of 1871 p. 1027*), against a subordinate lodge known as the Germania Lodge, No. 50, Knights of Pythias of New Jersey, and certain individuals, late members thereof.

Germania Lodge, No. 50, is an unincorporated association acting under a charter issued by the grand lodge on the 25th of May, 1870.

The gravamen of the bill is that the individual defendants have diverted certain funds of Germania Lodge, No. 50, for purposes not authorized by the charter or by-laws of the association, and that thereby a right of action has accrued to the complainant to recover the same.

The order of the Knights of Pythias is composed of three series of lodges—first, the Supreme Lodge, Knights of Pythias, which is an institution incorporated under the laws of the United States, and is the highest and supreme lodge of the world, its headquarters being in the United States. Next to that are the grand lodges, which possess charters or warrants legally granted by the supreme lodge. Of these the Grand Lodge of New Jersey is one. Then come subordinate lodges, which are chartered by the grand lodge, of which the Germania Lodge, No. 50, is one. The order has a written constitution and statutes. The constitution divides the organization into three separate departments— executive, judicial and legislative—and creates a great number of officers.

The constitution provides modes of enacting laws, to be binding on all lodges and members of the lodges.

The legislative records of the supreme and grand lodges, contained in several volumes, were offered in evidence to show that the constitution and laws, as contained in the printed book offered in evidence, were properly and lawfully adopted and passed.

The Grand Lodge of New Jersey was instituted by the Supreme Lodge of the World by a charter dated the 1st of April, 1870. By the terms of its charter the grand lodge was

"authorized and empowered to organize subordinate lodges in its own juris-diction in conformity to the laws established by the Supreme Lodge of the World, and govern said lodges according to the intent and meaning of the laws of the order as promulgated by the supreme lodge;"

and it closes thus:

"And the said Grand Lodge of the State of New Jersey doth solemnly promise to act according to the instructions of this charter until it is re-voked," &c.

The charter by the Grand Lodge of New Jersey to Germania Lodge, No. 50, authorized and empowered it

"to make laws, rules and regulations for its government and support in con-formity with the laws, rules and regulations of the said grand lodge and those of the Supreme Lodge of the Knights of Pythias, the officers and members of the said lodge No. 50 solemnly pledging themselves to act at all times in obedience to the commands and enactments of the said grand lodge, and in accordance with the laws, rules and regulations of the order, in default of which this charter or warrant of authority may be revoked, suspended or taken away at the pleasure of the said grand lodge."

By the installation ritual each officer sincerely promises that he will faithfully and impartially perform all the duties incumbent upon him as such officer, to the best of his ability and understanding, and in accordance with the provisions of the constitution and laws of the Grand Lodge of New Jersey and of the Supreme Lodge Knights of Pythias of the World.

Germania Lodge, No. 50, acted in full sympathy with and subordination to the Grand Lodge of New Jersey certainly up to and including the 31st of December, 1893, and thence apparently until November, 1894.

On the 13th of January, 1894, they rendered to the grand lodge a statement of their affairs for the previous year, including the names of their officers, the amount of money received and disbursed, the amount of cash on hand, and the number of their members, the latter being sixty-five. This was made, under the hand and seal of the association, by Nicholaus Rommell, chancellor commanding (president), and Charles A. Firner, keeper of records and seals (secretary).

In the fall of 1894 a majority of the members of Germania Lodge took offence at some direction or regulation of the grand lodge with regard to the mode of keeping their records, and disbanded, and resolved to proceed no further under the charter from the grand lodge. No formal action, as a body, was taken on this subject until a meeting of November 27th, 1894, but previously to that, at a regular meeting on November 13th, four members, who did not wish to leave the order, applied for and received from the lodge in meeting, what are called "withdrawal cards," which enabled them to enter any other lodge of the same order.

On November 27th, 1894, the lodge, in meeting, adopted a resolution to the effect that they should dissolve, draw the money from the bank and turn it over and make a present of it to the "Beneficial Verein." The language of the resolution, as translated from German, is: "Whereupon the lodge resolved to dissolve, draw the money from the bank, establish a society and present the same the money for charitable purposes." The evidence shows that they acted on the idea that, while they had no right to divide the money among themselves, they could make a present of it to a sick benefit association. Previous to the adoption of this resolution each of the officers had tendered his resignation as such.

There is no proof as to what sort of an association the "Beneficial Verein" was, or how organized, except that it was said to be a sick benefit association formed by the members of Germania Lodge, No. 50.

That all the members of the lodge, except those who took withdrawal cards on the 13th of November, resolved to abandon and did actually abandon the Knights of Pythias organization, is an admitted fact. The insignia, paraphernalia, seals, books and papers were left without care or custody in the hall which they had occupied, over a beer saloon owned and occupied by one of their members, Otto Jansen; and upon the stand all of them denied any custody or knowledge of the whereabouts of any of the books, insignia, paraphernalia, &c. Some of them were afterwards, pending the trial, found by the solicitor of the

complainant, acting under the verbal order of the court, in a closet in the lodge-room.

The lodge kept an account in the German Savings Bank of Newark, which commenced on the 1st of July, 1884, and went on continuously until the 14th of November, 1894, when it was transferred to a new account known as the Columbia Kranken Untersturtzen Verein (Sick Benefit Association), No. 3. The transfer was made by virtue of an order dated November 13th, 1894, signed by the defendants—Charles A. Firner, knight of the records and seals ; Max Seelinger, the chancellor commanding ; F. Teschke, Henrich Sonn and Otto Jansen, trustees (all defendants)—and is as follows :

"NEWARK, NEW JERSEY, November 13, 1894.
" *To Cashier of German Savings Bank :*
" Please pay over to Trustees of Germania Lodge, No. 50, K. of P., the full amount due to said Lodge. Respectfully, by order of above-named Lodge."

This order was filed with the bank, and a receipt given in these words :

"$695.59.                NEWARK, NEW JERSEY, November 14, 1894.
" Received from the German Savings Bank, Six Hundred and Ninety-Five Dollars 59/100, on Pass-Book No. 5,204, Germania Lodge. Order on file.
                              (Signed)      "OTTO JANSEN."

There is nothing on the minutes of November 13th to justify the order of that date, and the first entry on the minutes showing official action is that above set forth of November 27th, two weeks later.

Besides this money in the German Savings Bank, the lodge was the owner of four bonds of the Newark water bonded registered debt standing in its name on the register of the city in the comptroller's office, numbered 3,089, 3,090, 3,091 and 3,092, of the par value of $100 each, and on November 26th, by a paper signed by Max Seelinger, chancellor commanding, Charles A. Firner, secretary, that water stock was assigned to the Columbia Kranken Untersturtzen Verein, No. 3, and was registered in its name.

In addition to that, the lodge had a small sum of money—
$102.25—in the Security Savings Bank, in the name of "Christian Specht, [former] Treasurer of Germania Lodge, No. 50," and on the 14th of November this sum was withdrawn by Otto Jansen, then treasurer, and the pass-book delivered up.

On the 14th of November, 1894, there was deposited in the same bank to the credit of the trustees of the Columbia Kranken Untersturtzen Verein, $77.25, being just $25 less than the amount previously standing to the credit of Germania Lodge, No. 50. That money was afterwards drawn out by the defendant Henrich Sonn.

These parties afterwards organized another association called "Germania Lodge, No. 1, Improved Order Knights of Pythias," and some of these funds were turned over to it. This last organization, however, was not subordinated and owed no allegiance to the Grand Lodge of New Jersey. It seems to have been set on foot about the 10th of December, 1894, and on that date the whole of the $695.59 standing to the credit of the Columbia Kranken Untersturtzen Verein, No. 3, was drawn out by Anton Schonk, president, and Henrich A. Sonn, treasurer, of Columbia Kranken Untersturtzen Verein, No. 3. The order was in these words:

"10,206.                          NEWARK, December 10, 1894. ⎫
       "COLUMBIA KRANKEN UNTERSTURTZEN VEREIN, No. 3.   ⎬
                                                         ⎭
"*To the Cashier of German Savings Bank :*

"The Trustees of the above-named Society are herewith authorized to draw all the money belonging to the Columbia Kranken Untersturtzen Verein, No. 3, N. J. The Cashier will please oblige. $695.59. Pres., Anton Schonk; Sec., Max Seelinger; Treas., Henrich A. Sonn; Trustees, Otto Jansen, Max Seelinger, Nicholaus Rommell."

And the receipt for the money was signed by Max Seelinger, secretary.

This money when drawn out came into the actual possession of Henrich Sonn, as treasurer of the new organization—Germania Lodge, No. 1, Improved Order Knights of Pythias. A portion of it was deposited in the Dime Savings Bank of Newark, to the credit of Henrich Sonn, trustee, where it still remains.

On the 10th of December, 1894, Max Seelinger, as secretary, and Anton Schonk, as treasurer of Columbia Kranken Untersturtzen Verein, No. 3, sold to Charles Teschke the $400 of funded water bonds, and received the money therefor, which was handed to Otto Jansen. That made at least $1,155 of cash belonging to the lodge, counting the fund in the Security Savings Bank as $77.25 instead of $102.25, and it is so entered, as of November 28th, 1894, on a small account-book kept and produced by Mr. Sonn and offered in evidence.

A paper was produced dated November, 1894, which recited:

" We, the undersigned members of Columbia Kranken Untersturtzen Verein, No. 3, of Newark, New Jersey, do hereby·acknowledge the receipt of cash money due as amounting to $25,"

signed by thirty-eight or thirty-nine men, all of them said to have been members of Germania Lodge, No. 50, Knights of Pythias. The proof at first tended to show that that money was paid in cash to each of them, but cross-examination showed that it was actually paid in cash to very few—not more than two or three at the outside—the whole being left in the hands of Mr. Sonn, the treasurer. But a considerable portion of'it was disbursed for sick benefits, at the rate of $10 a week, and all that remained at the time of the hearing, so far as appeared, was $400 deposited in the Dime Savings Institution.

The fund which on the 14th of November, 1894, amounted to about $1,200, was the result of the accumulation of years of contributions of present and previous members of the association, and not of·the contributions of ·the· then actual members.

The intended action of the lodge, which was really developed on the 13th or 14th of November, 1894, coming to the knowledge of the officers of the Grand Lodge of New Jersey, Mr. Kranmer, the grand chancellor of the grand lodge, issued a commission to Mr. George Schmidt, of Granite Lodge, No. 21, as district deputy grand chancellor of the district which included·. Germania Lodge, No. 50, and Schmidt, by virtue of that commission, went to the lodge-rooms over ·Jansen's .saloon, found· Mr. Jansen, learned from' him that the lodge had disbanded, and

thereupon demanded the books, papers, paraphernalia and money belonging to the lodge, but was told that the money had been distributed and that the paraphernalia of the lodge was in the lodge-room. Shortly after that, and, as far as appears, before the filing of the bill, he demanded and received the charter of the lodge from Mr. Jansen, who had it behind his beer counter.

The original bill was filed on the 8th of December, 1894, against the lodge by its name, Charles A. Firner, Otto Jansen and the savings bank. An injunction was issued, which, however, did not succeed in staying the money in the hands of any of the persons who received it. Further information coming to the complainant, an amended bill was filed early in February, 1895, adding the additional defendants, and praying relief against them.

The actual tracing of the movement and disposition of the funds of the lodge came out on the hearing. Subsequently a motion was made to strike out the Germania Lodge as defendant and the allegation that it was still in existence as a voluntary organization, on the ground that it was substantially dissolved and had ceased to exist before bill filed.

The exact amount received by each of the defendants, as distinguished from the others, is as follows:

Otto Jansen received $102.25, moneys deposited in the name of Christian Specht, as treasurer, in the Security Savings Bank. He, Jansen, also received $400 in cash from the sale of the water bonds. He also signed, with the others, an order for the $695.59 on the German Savings Bank.

Henrich Sonn enters in his book on November 28th, 1894, that he received $1,155 of the funds. He actually received on December 10th, $695.59, and he received from Mr. Jansen the $77.25, and presumably he received the proceeds of the water bonds—$400—which would make in all $1,172.84.

Seelinger and Schonk transferred the water bonds and paid the money to Jansen.

The $102.25 deposited in the Security Savings Bank was transferred by the order of Seelinger, Jansen and Rommell.

The constitution of the supreme lodge provides, among other things, that

"the rituals of the order, the supreme constitution and the laws enacted by the supreme lodge in accordance therewith shall be the supreme law of the order of Knights of Pythias."

By .chapter 16, section 328, of the supreme statutes, the funds of the lodge are devoted to a particular purpose, as follows:

"The receipts from fees and dues and the increments thereof shall constitute a trust fund for carrying out the fraternal and beneficial features of the order, and shall not be expended for any other than those purposes and the payment of the necessary expenses of the lodge, as those purposes and expenses may be determined legislatively or judicially by the grand lodge having jurisdiction, which grand lodge shall also determine the vote that shall be necessary to make an expenditure from the fund, and the manner in which it may be invested, if at all. *This fund shall not be subject to partition among the members of a lodge, and in case a lodge shall from any cause cease to exist, said fund shall revert to the grand lodge within whose domain the lodge is located.*"

By article 8, section 5, it is provided that on the decease of a member in good standing, an appropriation of not less than $20 shall be made towards defraying the expenses of his funeral.

There was, in addition to that, a sick benefit privilege. Article 8, section 2, on that subject, is this:

"Every member who has received the rank of knight and is in good standing in his lodge, incapacitated by sickness or other disability from attending to his usual business or some other occupation, shall be considered a beneficial member, entitled to receive such weekly benefits as the by-laws prescribe, which shall not be less than one dollar per week."

In addition to the sick and funeral benefits provided, there is an insurance branch of the order known as the "Endowment Rank," of which members of the order are privileged to become members, and of this at least one of the members, Christian Specht, who took his withdrawal card from the lodge November 14th, 1894, when it was found that the lodge was about to dissolve, was a member. This branch of the business is entrusted to a board of trustees appointed and controlled by the supreme lodge.

The constitution and by-laws of Germania Lodge, No. 50, show that the terms of its charter were complied with, and that its by-laws were made in accordance with and subordinate to the constitution and statutes of the supreme lodge and grand lodge.

The grand lodge enacted and ordained a constitution for all the subordinate lodges, and that constitution was accepted by Germania Lodge, No. 50.

By article 13, section 4, of the constitution of the subordinate lodges, it is provided as follows:

"A lodge becoming dissolved by the surrender of its charter, its property and effects shall be returned to the grand lodge as provided for in article 12, section 3, subordinate lodge constitution, and the penalty provided for in said article and section relative to failure or refusal shall have full force and effect."

Article 3, section 1, of the by-laws of Germania Lodge, No. 50, which, as we have seen, were approved by the grand lodge, is in these words:

"Any brother of this lodge who is already a member for six months, and has paid to the lodge all dues, fines and assessments, shall, if he fall sick through no fault of his own, and disabled for work and possess the third grade, receive the sum of five dollars, weekly sick benefit money,"

until he has received $200, and after that he shall only receive $2.50 a week, but if he becomes afflicted with an incurable disease, then he is to have $1 a week.

The complainant offered in evidence several large volumes of the record of the proceedings of the supreme lodge to show that the laws contained in the volume offered in evidence had been regularly and lawfully enacted in accordance with the constitution of the supreme lodge.

The constitution of the subordinate lodges provides for the election of certain officers as president, secretary, master of finances and treasurer, and that no disbursements of the funds shall be made by an order from the president, attested by the secretary.

*Mr. Walter F. Hayhurst,* for the complainant.

*Mr. Samuel Kalisch,* for the defendants.

PITNEY, V. C.

The first question to be considered arises on the motion to strike out of the bill the allegation of continued organic existence of Germania Lodge, No. 50, Knights of Pythias, and its name as a party defendant.

I think the motion should be granted. The organization of the lodge had been destroyed by the withdrawal, on November 13th, 1894, of a part of its members, and by the resignation, on November 27th, of all its officers, and the resolution to dissolve, accompanied by the complete abandonment by all its members of the organization. This was not fully known to the complainant when it prepared its bill, and it should not be bound by the allegation of its continued existence. Though the statutes of 1885 and 1890 (*Gen. Stat. pp. 2588, 2592 §§ 324, 342*) provide for suing an unincorporated association like this at law, and it is possible, though I doubt it, that it warrants the making such association a party to a suit in equity like this, yet nothing can be gained thereby, and I think its name should be stricken from the bill as a party defendant.

This brings us to the merits.

It is familiar law that funds accumulated as were those here in question become, as soon as paid in, impressed with a trust with all its consequences. In this case the terms of the trust are found in the constitutions of the supreme, grand and subordinate lodges, and the laws of the former and by-laws of the latter. The funds being impressed with such a trust cannot lawfully be diverted therefrom, and all persons aiding and assisting in such diversion are guilty of a breach of trust and liable for the consequences. *Torrey v. Baker, 1 Allen 120; Abels v. McKeen, 3 C. E. Gr. 462; Fraas v. Barlement, 10 C. E. Gr. 84; Altmann v. Benz, 12 C. E. Gr. 331; Van Houten v. Pine, 9 Stew. Eq. 134,* and note on *p. 135; State Council v. Sharp, 11 Stew. Eq. 24,* and cases cited; *Crisman v. Smith, 17 Stew.*

*Eq. 240; Gable* v. *Miller, 10 Paige 627; Den* v. *Bolton, 7 Halst.*
*\*206; Den* v. *Pilling, 4 Zab. 653; Hendrickson* v. *Decow, Sax.*
*577; Nibl. Mut. Ben. Soc.* § *144 et seq.;* § *354.*

The case of *State Council* v. *Sharp, supra,* is quite in point.
Chancellor Runyon (at *pp. 26, 27*) says : " The defendants have
willfully violated the law of the society in dividing up its funds
among themselves and taking them to their own use. Of these
funds, part, at least (that called the widows' and orphans' fund),
was the accretion of years, and it is highly probable that others
than they made some of the contributions from which during
those years it has been accumulated. But from whomsoever
derived, the money in question, the council and widows' and
orphans' funds, was contributed under the charter for and dedi-
cated to certain specified purposes, for which it was, from the
time when it was contributed, held in trust by the society and
its officers to whose hands it was committed or to whose control
it was subjected. It was held by them also subject to the trust
to pay it over to the state council in case of the dissolution of
the subordinate one. The defendants, therefore, had no right
to take the money. It is within the jurisdiction of this court to
grant the relief which the complainant seeks."

The laws of the order of the Knights of Pythias provide how,
and upon what formalities, payments out of funds like these
shall be made. In letter and spirit they require that such pay-
ment shall be made only for certain purposes and after certain
prerequisites have been complied with ; and these are all based
upon certain action taken by the society when properly organ-
ized in subordination and allegiance to the supreme society.
These prerequisites and conditions were not complied with in
the disposition made of the funds in this case.

It will not help the defendants to show, as they have attempted
to do, that some of the funds went to the same persons and upon
the same occasions as they would have gone if the original organi-
zation had been preserved. The persons so receiving moneys
had lost their right in that behalf by abandoning the organiza-
tion, and the appropriation was not made in accordance with the
by-laws of the association.

It is objected to the right of the complainant to relief that although it was duly incorporated by special act of the legislature, yet it has no authority to collect and retain this money, and a distinction is made between the charter of the complainant corporation (*P. L. of 1871 p. 1027*) and that of the complainant in *State Council* v. *Sharp, supra.*    *P. L. of 1871 p. 356.*

The language of the charter of this last corporation, after giving express power to sue, &c., is this:

"Shall be able and capable in law and in equity to take, purchase, hold and receive to them and their successors, for the use of said association, any lands, tenements, goods, chattels, sum or sums of money by grant, gift, bargain and sale, will, devise or bequeath, from any person or persons whatsoever, and the same to grant, bargain, sell, mortgage, improve or dispose of for the use of the association, and in general to do all things which may be lawful or necessary for the well-being and proper management of the said corporation."

The corresponding language in the charter of complainant is this:

"Shall and may at all times hereafter be capable in law of having, purchasing, holding and possessing any lands, tenements, héreditaments and personal estate purchased, devised or bequeathed by any person or persons, bodies corporate or politic, capable of making the same."

I am unable to perceive any material difference in the effect of the verbiage of the one and that of the other.    The right to sue is given by the General Corporation act to all corporations, and it is not too much to say that when these moneys were paid into the treasury of Germania Lodge, No. 50, Knights of Pythias, the payment was, in law, to the complainant as the only corporate entity in existence which could hold the title and protect it.    The actual custody and care of the fund was, by the by-laws, entrusted to certain individuals so long as they continued to act as an association in obedience to the laws of the order, but when they ceased so to act their right and power of control also ceased, and the legal title in the complainant at once became paramount.

It is further insisted by the defendants that the complainant

fails to show any facts out of which a forfeiture arose, and counsel plants himself upon the ground that the language is that the charter of the lodge must be surrendered by its chancellor commanding, and that there must be some formal suspension of the organization by the superior lodge. But this argument ignores the language of chapter 16, section 328, of the supreme statutes, which enacts that " in case a lodge shall from any cause cease to exist, said fund shall revert to the grand lodge within whose domain the lodge is located."

Besides that, I think that under the other section relied upon by the defendants, to the effect that "A lodge becoming dissolved by the surrender of its charter, its property and effects shall be returned to the grand lodge," &c., the defendants are estopped from setting up that this lodge was not, to all intents and purposes, dissolved and its charter surrendered. They did all in their power to produce that result, and, in my judgment, they succeeded.

I am of the opinion that the complainant is entitled to relief, and it remains to consider against whom and to what extent.

The individual defendants are thirteen in number. Of these, one was reported, by the sheriff, dead, and one out of the state, against whom no further proceedings have been taken, leaving eleven who were served with process, appeared and joined in a single answer. They are Huff, Rommell, Seelinger, Kirschbaum, Firner, Jansen, Kull, Schonk, Schill, Sonn and Robert Teschke. By their answer they denied every allegation of the bill, and put the complainant on proof even of matters that were in their own personal knowledge. The only information the complainant derived from the answer is an allegation toward the last, to the effect that

"all the members of the said Germania Lodge, by unanimous consent, divided the funds of said lodge between themselves, share and share alike, as they had a lawful right to do, and that each of these defendants' shares did not exceed $40, and that each of these defendants has long since used up his share for living expenses; that the said division of said fund was made some time before the filing of the original bill of complaint in this suit."

This statement in the answer is substantially untrue.   There was no actual division of the fund, but only a nominal division, and it was made by individuals, not as members of Germania Lodge, No. 50, Knights of Pythias, but of Columbia Kranken Untersturtzen Verein, No. 3.

The evidence shows that Rommell, Seelinger, Firner, Jansen, Schonk, Sonn and F. Teschke took an active part in the disposition and handling of the funds of the Germania Lodge, No. 50, and while some of them may not have actually had the money in their personal possession, the disposition of the funds which was made was the result of a common understanding and action. Those defendants must, in my judgment, be held jointly and severally liable for the whole fund.   I can find no evidence to implicate Huff, Kirschbaum, Kull, Schill and Robert Teschke, and there will be no decree against them, but as they joined in an answer with the others which failed to disclose the real facts of the case, and as they admitted and claimed that they were among the seceding members of Germania Lodge, No. 50, which authorized, in effect, the action taken by the others, I think they are not entitled to costs.

The bank-book of the Dime Savings Bank, containing a credit of about $400 to Germania Lodge, No. 1, Improved Order Knights of Pythias, was impounded during the hearing, and must be delivered to the complainant, and the defendants must do all acts necessary to enable the complainant to draw the money.

The decree will be for $1,172.25, with interest from February 11th, 1895, subject to a credit for whatever is realized from the Dime Savings Bank.

The complainant is entitled to costs against the defendants individually.