28 So.2d 166

**HERMIONE LODGE NO. 16, KNIGHTS OF PYTHIAS, OF DECATUR, et al. v. GRAND LODGE, KNIGHTS OF PYTHIAS OF ALABAMA.**

8 Div. 351.

Supreme Court of Alabama.

Nov. 21, 1946.

Rehearing Denied Dec. 19, 1946.

S. A. Lynne, of Decatur, for appellants.

Ben F. Ray and Graham Perdue, both of Birmingham, for appellee.

GARDNER, Chief Justice.

The appeal is from a decree overruling demurrer to the cross-bill filed by the Grand Lodge, Knights of Pythias, of the Grand Domain of Alabama, a body corporate, and a party defendant to the bill filed by a subordinate lodge known as Hermione Lodge No. 16, Knights of Pythias, of Decatur, Alabama, a body corporate, and others, members of said subordinate lodge, suing in behalf of themselves and all other members of said lodge.

In the original bill it was disclosed that Hermione Lodge No. 16, was incorporated in March, 1897, under the general laws of Alabama authorizing the formation of benevolent societies; that there was no capital stock and at no time was it a business corporation, but was in the nature of a eleemosynary corporation for the benefit of its members. Its sessions were secret and ritualistic. The Lodge continued to hold meetings and carry on the operations of its organization until July 17, 1933, at which time the members failed to attend, a quorum was unobtainable, and from that date on it has not carried on the objects for which it was organized. Quite a few members are named in the bill, but it is shown that they are very numerous, many nonresidents whose addresses are unknown, and cannot, without great inconvenience and an oppressive delay, be brought before the court. It further appears that the Hermione Lodge No. 16, owned property derived from the dues and contributions made by the members; that it owned chairs and other furniture used in ritualistic work,

and was, also, the owner of cash now held by one Clyde Hendrix, as Trustee of said corporation, who was also Trustee of stock in the First Federal Savings and Loan Association of Decatur, Alabama, and a note given to it by the Decatur Realty Company, also, a mortgage executed to the Lodge by a Mrs. Timberlake; the aggregate value of said property being in the neighborhood of $2400. Defendant Bailey is sued in his capacity as Master of Finance and Keeper of the Record and Seal, having in his possession the records of the corporation.

The bill is filed upon the theory that the corporation having become defunct in 1933, all of its remaining assets belonged to those who were members of the corporation at the time of its dissolution, and that these assets should be divided among such members. Mobile Temperance Hall Ass'n v. Holmes, 189 Ala. 271, 65 So. 1020.

The original bill further alleges that the defendant Grand Lodge, Knights of Pythias, of the Grand Domain of Alabama, is making claim of the Hermione Lodge No. 16 that all the monies and properties of every kind belonging to it should be turned over to the proper officers of the Grand Lodge. Said defendant is called upon to propound its claim and specifically the basis therefor.

The bill was duly answered by the Grand Lodge, Knights of Pythias, of the Grand Domain of Alabama, and its answer asked to be taken also as a cross-bill, setting-up its claim to the assets of the subordinate lodge and asking affirmative relief in relation thereto.

We will attempt to summarize, as best we may, the essential averments of the cross-bill, omitting unnecessary details. This summary is as follows: The Supreme Lodge, Knights of Pythias, is a secret fraternal organization incorporated by an Act of Congress 16 Stat. 101, in August, 1870, with power to alter and amend its constitution and by-laws at will, to prescribe modes of initiation and the like for the working of said Order, with the further provision that no Grand or subordinate lodge purporting to be Knights of Pythias should have legal standing unless chartered by

or through the regular elected officers of the Supreme Lodge. Pursuant to said legislative authority the Supreme Lodge adopted a constitution wherein it is declared that said Lodge shall be the source of all authority of the Order of Knights of Pythias, and that the structure of the Order should consist of the Supreme Government, such Grand Lodges as possess charters, and that the Order of Knights of Pythias should be composed of persons upon whom any rank of the Order shall have been legally conferred. The Act incorporating the Supreme Lodge was amended by an Act of Congress approved in June, 1894, 28 Stat. 96, making provision for said corporation to hold real and personal property not exceeding in value $100,000. It is significant that this amendatory Act also contained the further provision that such property should not be divided among the members of the corporation, but should descend to their successors for the promotion of fraternal and benevolent features of said corporation, and that the corporation should not engage in any business for gain, its purpose being purely fraternal and benevolent. So much, therefore, for the inception of the Supreme Lodge.

The defendant Grand Lodge was organized in Alabama on April 19, 1873, under the authority of the Supreme Lodge by virtue of a legally issued charter, which charter empowered the Grand Lodge to organize subordinate lodges in its own jurisdiction in conformity with the laws established by the Supreme Lodge, and to govern said subordinate lodges in accordance with the intent and meaning of the laws promulgated by the Supreme Lodge. The Grand Lodge in accordance with its solemn promise to that effect has operated continually under said charter down to the present time, and paid allegiance to the Supreme Lodge, recognizing and observing its constitution and laws.

In accordance with the authority granted it in its charter, the Grand Lodge in 1876 organized the subordinate Hermione Lodge in Decatur, Alabama, and caused a charter to be issued to it of said date. This charter specifically stated that the Hermione Lodge was authorized to make rules, regulations and by-laws for its government and support in conformity with the laws of the Grand Lodge and of the Supreme Lodge, Knights of Pythias, and that the officers and members of said Hermione Lodge No. 16 would pledge themselves to act at all times in obedience to the enactments of said Grand Lodge and in accordance with the laws and regulations of the Order, in default of which its authority may be revoked, suspended or taken away at the pleasure of the Grand Lodge.

The statutes of the Supreme Lodge make provision for the government of Grand and subordinate lodges. The most pertinent provisions are as follows: (1) The funds of the Grand Lodge shall be disposed of and applied within the discretion of the Grand Lodge, except that such funds shall not be used for any purpose inconsistent with the laws, principles and purposes of the Order, and shall not be partitioned or divided among the members of the Grand Lodge. In the event the Grand Lodge for any cause should cease to exist its funds shall revert to the Supreme Lodge. (2) Whenever a lodge becomes defunct the membership cards of the members of such lodge immediately revert to and become the property of the Grand Lodge, and shall be delivered to the Grand Lodge, together with the books and other property belonging to the defunct lodge. (3) The funds of a subordinate lodge shall not be used for any purpose inconsistent with the laws, principles and purposes of the Order, and shall not be partitioned or divided among the members of the lodge, and that in case the lodge for any cause should cease to exist its funds shall become the property of the Grand Lodge within whose domain it is located. (4) That the Grand Lodges in the various States shall enact laws for the government of subordinate lodges in their respective domains not inconsistent with the Supreme Order.

The cross-bill further discloses that the Grand Lodge was incorporated by an Act of the Legislature of Alabama approved April 21, 1896, Acts 1896–97, p. 5, and it is provided therein that said corporation shall have a constitution and by-laws as may to it seem proper for its own government and that of its subordinate lodges, and

the power to amend the same at pleasure, provided, however, that such constitution, laws and amendments do not conflict with the laws of this State or of the United States. The Act further provided for the membership, officers and committees of subordinate lodges as may be necessary to carry into effect the purpose of the organization; that the corporation may own and hold property, real and personal, whether acquired by lease, purchase, donation, bequest or devise, or held in its own or in the name of its subordinate lodges. The Act contains the further pertinent provision: That any of said property so acquired shall not be divided among the members of the corporation but shall be held and used, and descend to their successors for the promotion of the objects and purposes of the corporation.

For the government of the subordinate lodges it is provided in the statutes of the Grand Lodge that the receipts from fees and dues, and the implements thereof shall constitute a Trust Fund for the carrying out of the fraternal and benevolent features of the Order; that the funds of the lodge shall not be subject to partition among the members thereof, and in case the lodge shall for any cause cease to exist said funds shall revert to the Grand Lodge. It is further provided that any donation or bequest shall be applied as the donor may direct, provided such direction is in conformity with the principles of the Order, but that should the donation or bequest be made without direction the same shall be carried to the Trust Fund.

It is further disclosed that pursuant to the statutes of the Grand Lodge each of the alleged members of the Hermione Lodge No. 16 in order to become members of the Order agreed, as provided in the ritual, as follows: "(a) I further promise that I will not become a member of or recognize or countenance any organization using the name of this Order, or any derivative thereof, which is not organized by and under the control of the Supreme Lodge of Knights of Pythias. (b) I further promise that I will obey the laws in so far as possible in compliance with the Order."

The cross-bill, therefore, is filed upon the theory that the laws of the Order to which each member subscribed when seeking membership as a Knights of Pythias expressly provides that when the subordinate lodge ceased to exist its property should not be divided among its members, but should become the property of the Grand Lodge within whose domain the said subordinate lodge is located, and to be used by the Grand Lodge for the fraternal and benevolent features of the Order; that the Hermione Lodge No. 16 is such a subordinate lodge and, that the members thereof while receiving their initiation into the Order, agreed to obey its laws and to comply with its requirements and thereby entered into a solemn contract. That from the inception of the Order of the Knights of Pythias as organized in 1870 and as subsequently amended there is express provision running through all the laws and regulations that the funds of the Order should be held in a Trust Fund for the benevolent purposes of the organization and shall never be divided among its membership.

The Hermione Lodge No. 16 was organized under a charter of the Grand Lodge in 1876 long prior to its incorporation in 1897. It further appears that the Grand Lodge was incorporated in 1896. From the averments of the cross-bill, therefore, it is clear enough that the Hermione Lodge No. 16 had become defunct, and that the laws of the Order expressly provided that in such contingency the membership cards of the members of such lodge immediately revert to and become the property of the Grand Lodge and shall be delivered to the Grand Lodge, together with the books and other property belonging to the defunct lodge. And, as previously noted, the laws of the Order further provided that the funds of a subordinate lodge should not be used for any purpose inconsistent with the principles or purposes of the Order, and should not be partitioned or divided among the members of the lodge.

For the equity of the original bill complainant placed much reliance upon Mobile Temperance Hall Association v. Holmes, supra. In that case the bill was filed for

the distribution of the assets of a defunct corporation, which assets consisted of $3,000. on deposit in the bank to the credit of the Mobile Temperance Hall Association, which latter association declined to settle the trust solely on the ground of uncertainty as to the proper parties in interest. No superior organization was claiming the funds or insisting that its distribution among the surviving members would be in violation of any law, order or regulation of any superior organization. The Mobile Temperance Hall Association case is merely authority to the effect that the assets of a defunct corporation of the character there involved could be properly disbursed among the members who were last active in its affairs just previous to its dissolution. There is nothing in that authority which in any manner affects the equity of the cross-bill as presented in this particular case. It is authority, however, to the effect that in reality Hermione Lodge No. 16 as a corporation may properly be termed a "corporate ghost," and consequently the mere fact of its incorporation long subsequent to its organization can in no manner add to the rights of the members of the subordinate lodge, or affect their membership in any manner whatsoever.

The Colorado court in Die Gross-Loge, etc. v. Wolfer, 42 Colo. 393, 94 P. 329, very clearly pointed out the mere incorporation of the local lodge in no manner affects the right of the Grand Lodge to recover its funds as provided in the laws of the Order. See also Lenoux v. Annual Alabama Conference, etc., 236 Ala. 529, 183 So. 672; Grand Lodge, Knights of Pythias v. Germania Lodge, 56 N.J.Eq. 63, 38 A. 341.

To the case of Wichita Council No. 120 v. Security Benefit Association, reported in 138 Kan. 841, 28 P.2d 976, 94 A.L.R. 629, there is a valuable note concerning the property rights of subordinate lodges as controlled by the laws, rules and regulations of the superior Order in benefit and fraternal societies. As disclosed by a consideration of these authorities much depends, as of course, upon the varying rules and regulations of the Order involved.

We have examined with care the authorities relied upon by counsel for complainant, among them State Council of Jr. O.U. A.M., v. Enterprise Council No. 6, 75 N.J. Eq. 245, 72 A. 19; Grand Lodge of Massachusetts v. Snow, 266 Mass. 483, 165 N. E. 479; Wicks, Treasurer of Local Assembly v. Monihan, 130 N.Y. 232, 29 N.E. 139, 14 L.R.A. 243; Vicksburg Lodge, No. 26 v. Grand Lodge of Free and Accepted Masons of Mississippi, 116 Miss. 214, 76 So. 572. We are of the opinion that each case is distinguishable from that here presented. Under the rules and regulations governing some of the fraternal orders some of the courts have construed the power of the parent governing body to forfeit property of subordinate branches by means of suspending or expelling such branches as being an exercise of arbitrary authority and amounting to confiscation of property. Such was the holding of some of the authorities cited above and, also, some of those found noted in 38 Am.Jur., pages 474 and 475. But, as observed in 10 C.J.S., Beneficial Associations, § 64, page 307, the rights of the central organization depends primarily on the charter of incorporation of the society, or the articles of association, and its constitution and by-laws; and the rule as to exercise of arbitrary power and confiscation of property is recognized in some of the authorities cited, likewise in 10 C.J.S., supra. Illustrative of this line of authorities is the Vicksburg Lodge case, cited above, from the Supreme Court of Mississippi. But upon examination it is found that the decision in that case turned upon a regulation adopted by the Grand Lodge for the government of its subordinate lodges, referred to as Section 46 in the statement of the case, as well as in the opinion of the court. The ruling was that this section was to be construed as authorizing in cases of voluntary dissolution of a subordinate lodge, the vesting of the title of the property of the local lodge in the Grand Lodge as a Trustee for the purpose of paying the debts of the defunct lodge and devoting whatever should remain for the purpose of masonic charity, as is insisted in the cross-bill in the instant case. That decision, however, holds that this particular regulation did not authorize the

Grand Lodge to arbitrarily forfeit the charter of the subordinate lodge and confiscate its property. In the instant case we have the voluntary dissolution of the subordinate lodge. There is no occasion, therefore, to enter into a discussion of a question of forfeiture of charter and matters of that character.

■ The case here is to be determined upon the facts set out in the cross-bill, which shows that the lodge is defunct by reason of the abandonment of the purposes for which it was created, and that it was in effect a voluntary dissolution. The author of the note as found in 94 A.L.R. page 646 has, we think, succinctly stated the principle here controlling, where it was observed: "It seems clear, as it has been held, that benefit societies, under some circumstances, may, by the adoption of a constitution and by-laws or other general rules, determine finally the property rights and interest of a subordinate lodge in and to funds and property held or accumulated by the latter, and that local lodges are bound thereby, so that, where properly so provided, a subordinate lodge, upon voluntary dissolution of its charter, must surrender its property and funds to the supreme body." This summary of the holdings of the court in cases of that character is well supported by the authorities, as well as common sense and sound reason.

The Kentucky case of Brotherhood of Railroad Trainmen v. Williams, 211 Ky. 638, 277 S.W. 500, is cited as very much in point. The gist of the holding of that authority may be found stated in headnotes 4 and 5, which read as follows: "(4) Generally voluntary associations, may by constitution and other general rules, determine finally property rights and interests of members, or of subordinate lodge, in and to funds and property accumulated by local lodge, and all members of lodge, as well as the local itself, are bound thereby. (5) The supreme body of a voluntary association may enforce its laws, properly enacted, requiring a subordinate lodge, on voluntary dissolution, to surrender its property and funds to the Grand Lodge."

The case of Tiffany v. Mooney, 263 Mass. 264, 160 N.E. 808, from the Massachusetts court is also directly in point. The holding in that case was that the property of the local council was held in trust to be delivered over to the State council in case of dissolution, citing Grand Lodge of Knights of Pythias of New Jersey v. Germania Lodge, No. 50, 56 N.J.Eq. 63, 38 A. 341, where the decision was that the action of the subordinate council, on abandonment of the organization, in voting to pay over its funds to a sick benefit society not connected with the Order constituted a breach of trust. And, in the Pennsylvania case of Great Council IORM v. Wingohocking Tribe IORM, 14 Pa. Dist. & Co. R. 719, the holding was that the fund in the hands of the local lodge was subject to the general trust imposed by the laws of the Order and that the subordinate lodge was exercising a stewartship over this fund. See also Koerner Lodge, No. 6, K. of P. v. Grand Lodge, 146 Ind. 639, 45 N.E. 1103; Freemeyer v. Industrial Indemnity Association, 101 Ark. 61, 141 S.W. 508; Clark v. Iowa State Traveling Men's Association, 156 Iowa 201, 135 N.W. 1114, 42 L.R.A.,N.S., 631.

■ But, a further discussion of the authorities we deem unnecessary. Here the local lodge has become defunct—there had been a voluntary dissolution. The laws of the Order expressly provided that in such contingency the membership cards became the property of the Grand Lodge to be delivered to it, together with the books and other property belonging to the defunct lodge. Any reading of the laws of incorporation, as well as all rules and regulations made in pursuance to the authority granted, will disclose that throughout the history of this fraternal organization there has been express provision that its funds be devoted for the benevolent purposes for which it was created, and are to be held in trust for that purpose and that purpose only, with the express prohibition against the distribution of any of the assets among the members of the Order. No language could have been employed to have made plainer this underlying principle of the Order. Each person in attaining membership in the subordinate lodge entered into a solemn pledge to abide by the laws and regulations of the Order, and the members

of the Order are without authority to divert its funds from the purposes for which, under the laws of the Order, they have been thus dedicated. 10 C.J.S., Beneficial Associations, § 32, p. 277. And a Court of Equity has jurisdiction, in such a case, to so direct the application of the funds to the avowed purposes of the beneficial association. 10 C.J.S., Beneficial Associations, § 32, p. 277. None of the authorities cited and, indeed, none that have come to our attention, authorize the distribution of the assets of a subordinate lodge upon voluntary dissolution where the laws of the ·Order are as herein indicated. We think it is clear enough the Grand Lodge was within its rights in asserting its ownership of all the effects of the complainant subordinate Hermione Lodge No. 16.

We recognize the rule, of course, as noted by complainant that where full relief is obtainable by defendant under an answer, a cross-bill will not be entertained. Hinds v. Federal Land Bank, 235 Ala. 360, 179 So. 194; Wood v. Amos, 236 Ala. 477, 183 So. 639; Emens v. Stephens, 233 Ala. 295, 172 So. 95. But a cross-bill is appropriate when it sets up new matter not in the original bill and prays for affirmative relief, or presents the same subject matter in a different aspect; or, as otherwise expressed, to obtain relief for any cause connected with or growing out of the bill. Latimer v. Milford, 241 Ala. 147, 1 So.2d 649.·

We are of the opinion that the cross-bill was appropriate in the instant case. The Grand Lodge not only propounds its claim and title to the property but seeks affirmative relief in regard thereto. There is cash on hand held by defendant Hendrix as Trustee; there is stock in a private corporation; and a note to the subordinate lodge, and also a mortgage. The cross-bill also seeks possession of the records of the lodge to which it is entitled under the laws and constitution of the Order. All of these matters call for affirmative action on the part of the court in order that the Grand Lodge may be invested with the effects of the subordinate lodge, and proper orders will be entered enforcing its rights thereto and protecting all parties in interest, by appropriate decree. This objection to the cross-bill, therefore, is likewise without merit.

It results that in our opinion the decree of the trial court overruling the demurrer to the cross-bill was correct, and is due to be affirmed. It is so ordered.

Affirmed.

FOSTER, LAWSON, and STAKELY, JJ., concur.