64 So.2d 405

**GRAND LODGE, KNIGHTS OF PYTHIAS OF ALABAMA, v. HERMIONE LODGE NO. 16, KNIGHTS OF PYTHIAS OF DECATUR.**

8 Div. 610.

Supreme Court of Alabama.

Nov. 20, 1952.

Rehearing Denied March 19, 1953.
Further Rehearing Denied April 23, 1953.

642

Ray & Giles, Birmingham, for appellant.

Russell W. Lynne, Decatur, for appellees.

SIMPSON, Justice.

This litigation originated by a bill in equity by Hermione Lodge No. 16, Knights of Pythias of Decatur, Alabama, a body corporate, and two of its members suing in behalf of all the members against the Grand Lodge, Knights of Pythias of the Grand Domain of Alabama, also a body corporate. The purpose of the bill was to establish complainants' right and title to assets held by the local lodge as against any purported claim of the defendant Grand Lodge upon the theory that said local lodge, as a corporation, had become defunct and dissolved and that its remaining assets under the law became the property of the individuals who were then members of the organization.

Defendant was called upon to propound its claim, which it did by answer and cross-bill. The theory of the cross-bill was that the complainant lodge, notwithstanding its incorporation, was a subordinate lodge of the Order of the Knights of Pythias, having been instituted as such by authority of the Grand Lodge of Alabama in the year 1876 and having existed as such until 1933, when it became defunct; that as such subordinate lodge, complainant was subject to the fundamental laws, rituals, etc., of the Supreme Lodge of the Order and the Grand Lodge of the Domain of Alabama; that by an act of Congress incorporating the Supreme Lodge and by its constitution and laws made and provided, a subordinate lodge was forbidden to use its funds for any purpose contrary to the purpose and laws of the Order or to divide its property among its members, and was required in event of its ceasing to exist as a lodge to surrender its funds and properties to the Grand Lodge of its domain to the end that such assets be devoted to the benevolent and fraternal purposes for which the order was founded.

Complainant demurred to the cross-bill and from an interlocutory decree overruling the demurrer, prosecuted an appeal to this court. Our decision on that appeal is reported as Hermione Lodge No. 16, etc., v. Grand Lodge etc., in 248 Ala. 473, 28 So. 2d 166, 168 A.L.R. 948. In that opinion by the then Chief Justice Gardner, the case made by the pleadings is set out in much detail. The fundamental questions there presented, viz., the validity of the rules and regulations of the superior lodge for confiscation of property of a defunct subordinate lodge and the effect of the status of a subordinate lodge of incorporation under the laws of Alabama, were given a painstaking consideration and treatment. The conclusion reached and stated was that the pertinent provisions of the organic law of the order were valid, supporting the claim propounded by the cross-bill, and that the effect of incorporation of the subordinate lodge after its institution could in no man-

ner add to the rights of the individual members of said lodge.

On a final hearing on submission of the cause for final decree on the pleadings originally filed and as amended and on testimony given before a commissioner, the trial court entered a final decree in favor of the complainants. The respondent Grand Lodge has brought this appeal from that decree.

■ In view of the complete statement of the case on former appeal when the pleadings were under consideration, it is not necessary that we encumber this opinion with that matter, nor is it necessary that we enter upon a reconsideration of the legal principles there enunciated. We are content to reaffirm what we there held. While some amendments were added to the original bill, their effect is primarily to fortify the original theory, that is, that the complainant's situation is that of a corporation rather than a subordinate lodge in the general concept. One amendment sets up the fact that the complaining lodge's assets were derived from the purchase of a tract of land, erection of a building thereon, and the subsequent sale of the property, which yielded a surplus over mortgage indebtedness. It is alleged that in order to help defray the cost of the building, members of the lodge were induced to purchase "script" in small amounts and the proceeds were devoted to the project. The exact nature of this "script" does not appear. Apparently these instruments were proposed to be redeemd under some circumstances by the lodge but all other questions aside, the testimony discloses that the amount realized from the sale of the "script" to the members was a mere fraction of the total cost of construction and that some of this "script" was redeemed and some destroyed long prior to this litigation. It is not made to appear that any "script" is now outstanding. It is, therefore, a reasonable deduction that whatever payments were made on the project were made out of the general resources of the lodge from whatever source derived. While it was obviously the plan of the lodge to make the building self-liquidating in part, it appearing that certain portions of the building were designed so to be and were at times rented, only a small part of the cost was actually paid. From the inception of the project until the property was sold, there were large outstanding mortgage debts which were only discharged when it was sold. There is an absence of any evidence tending to show that the property or its proceeds was ever treated as purely corporate assets. On the contrary, the lodge made semi-annual reports to the Grand Lodge in compliance with the laws of the order and on each such report was made a financial statement itemizing all receipts by way of dues, fees, donations, etc., and under appropriate headings investments were shown, along with liabilities and net surplus. The equity of the lodge in the property and later the surplus remaining after its sale were reflected on each report to the Grand Lodge.

■ Another amendment to the original bill sets out a decree or adjudication of the Grand Lodge, revoking the charter of Hermione Lodge No. 16, made in the year 1944. The insistence is that the dissolution of the lodge was not voluntary on its part, but the result of arbitrary action of the Grand Lodge. The purpose of this amendment seems to have been to avail of the rule stated in some of the cases relied upon to the effect that for the superior lodge to be entitled to take over assets of a defunct lodge, the dissolution of the lodge must have been voluntary on its part. Some reference to this situation is made in our former opinion in 248 Ala. at pages 478–479, 28 So.2d 166. Without venturing an expression of any opinion as to the effect of the nature of the dissolution, we there observed that Hermione Lodge No. 16 ceased to exist as a lodge by its own volition; that is, its members ceased to hold meetings or to otherwise function in the year 1933. Evidence of this fact is undisputed, in fact seems to be conceded. The action of the Grand Lodge more than ten years thereafter was merely an official declaration of an accomplished fact.

The evidence adduced is somewhat voluminous, yet it is manifest that in view of our former decision eliminating complainant's claim as a dissolved corporation,

on the allegations there made the single issue remaining for decision on the final hearing was the claim of the respondent Grand Lodge as set up in its cross-bill. Boiled down, the factual issues are: First, whether or not Hermione Lodge No. 16, Knights of Pythias of Decatur, Alabama, was a subordinate lodge of the Order of Knights of Pythias, instituted and existing under authority of the Grand Lodge, Knights of Pythias of Alabama—itself a creature of the supreme authority of the Order,—the members of Hermione Lodge being members of the Order of Knights of Pythias and subject to the fundamental laws thereof; second, whether the fundamental laws of the Order are as alleged in the cross-bill. If so, the claim of the cross-bill should have prevailed.

■ Much of the evidence is addressed to the first of these issues. A great deal is introduced to prove the incorporation of Hermione Lodge and actions done by it in its corporate name. None of this evidence, we are persuaded, is sufficient to change our conclusion stated with respect to the pleadings on the former appeal that "Hermione Lodge No. 16 as a corporation may properly be termed a 'corporate ghost'" as affects the rights of the members of the subordinate lodge. Without dispute Hermione Lodge No. 16 was instituted as a subordinate lodge by the Grand Lodge of Alabama and a charter as such was issued to it in the year 1876. (It was not until 1897 that incorporation was effected and not until 1905 or thereabouts was the building project commenced.) We think the evidence sustains such a view.

· Hermione Lodge existed and functioned as such subordinate lodge so far as appears in complete obedience to and consonance with the laws of the Order and in recognition of the authority of the Grand Lodge. From time to time it elected and sent Grand Lodge representatives to conventions of the Grand Lodge of Alabama. From aught appearing, members of Hermione Lodge were in all respects members of the Order. There is an entire absence of any positive evidence to the contrary; that is, that Hermione Lodge as a body corporate was operating as an independent entity, owing and paying no allegiance to the Order or its superior lodges. On the reports made, individual members are listed by the rank and title prescribed by the laws of the Order. Excerpts from books of the Order, given by witnesses familiar with the same and occupying official relation to the Grand Lodge, and testimony of these and other witnesses, go to show the existence of the pertinent provisions of the laws of the Order, including the Congressional Act incorporating the Supreme Lodge, Knights of Pythias. These provisions being shown and it being further shown that all who came into the Order as members were bound thereby and governed by the supreme body of the Order, and it being further established, as we have indicated, that Hermione Lodge and its members came into the Order and functioned as did other subordinate lodges and members, the position that the complainant and its members might enjoy the benefits without bearing the burdens of such relationship is untenable.

■ Some insistence is made that in view of the omission from the record before us of certain exhibits introduced on the hearing below, we must give effect to the rule that findings of fact by the trial court will not be revised where it affirmatively appears that there was evidence before that court not before the reviewing court. In this instance it was shown that the charter issued by the Grand Lodge to Hermione Lodge No. 16 had been destroyed after its surrender and revocation by the Grand Lodge. To supply the omission, copies of the charter issued to two subordinate lodges in the state, one shortly prior and the other shortly subsequent to the issuance of Hermione Lodge charter, were offered as exhibits but, as stated, seems to have been omitted from the record. As we view it, these extraneous documents were of doubtful value for any purpose. The primary object of the evidence with reference to the charter was to indicate the authority of Hermione Lodge No. 16 to function as a subordinate lodge of the Order. The clear evidence otherwise that such a charter was actually issued and that Hermione Lodge No. 16 existed and functioned by virtue thereof was sufficient to supply

the omission without more. This in view of the whole evidence relating to the issue first stated, viz., the existence of complainant as a subordinate lodge. The matter thus omitted, therefore, being of an incidental or questionable nature, the rule invoked will not be applied, the evidence otherwise being sufficient to establish the stated fact.

After a careful and attentive consideration of the entire evidence we find ourselves in disagreement with the conclusion reached by the learned trial court. We think the case on the evidence is governed by the concept elucidated in the opinion on the first appeal rather than by the authorities cited by appellees to sustain the ruling below. It is our considered judgment that appellant was entitled to the relief prayed for in its cross-bill. The decree is therefore reversed and a decree will be here rendered under the prayer of the cross-bill.

Reversed and rendered.

LIVINGSTON, C. J., and FOSTER and GOODWYN, JJ., concur.

### On Rehearing

SIMPSON, Justice.

 In the brief accompanying the application for rehearing in this case counsel for appellee charges that we have flagrantly transgressed the rule that where the record on appeal fails to contain all of the evidence introduced on the trial of a cause, the appellate court will not review a judgment or decree on the facts, but will indulge the presumption that that evidence which is omitted from the record would sustain the conclusion of the trial court. The proposition is fortified by many citations of authority and quotations therefrom. As a basis for his contention, counsel identifies certain exhibits introduced by the cross-complainant (appellant here), some twelve in number, and states that all of them are omitted from the record. The rule is not to be questioned, but we are at a loss to understand counsel's position in this regard. Actually, each and all of these exhibits are before us in their original

form, certified to us by the register of the circuit court, in equity, under the provisions of Rules of Practice in Supreme Court, rule 47, Code 1940, Tit. 7 Appendix, all of them being matters impracticable of reproduction in the record. The insistence is, therefore, without basis of fact and without merit.

. True, no formal petition was presented to this court for permission to send up the exhibits, but they were sent up under the certificate of the register and were duly identified. We do not apply Rule 47 strictly to the prejudice of a full and fair review. No objection was made to this matter of compliance and we regarded the matter of strict compliance as having been waived. In truth, it was waived and we reviewed the case accordingly, but had objection been taken the matter could have been corrected by a more strict compliance.

In the original opinion, supra, we stated that two charters of subordinate lodges other than Hermione Lodge, which were introduced for the purpose of showing the form and character of the charter issued to Hermione Lodge, were not before us. In this we were mistaken. While we did then, and do now, regard these charters as not of controlling importance, we wish to correct our previous statement. The photostatic copies of these charters, as introduced and identified on the hearing below, are included among the other exhibits certified to us, but were not brought to our attention until the original decision had been announced. It results that no evidentiary matter which was before the trial court has been deprived us.

 All of the testimony submitted to the trial court, and forming the basis of its decree, was developed by interrogatories or before a commissioner. So it is our duty to examine and pass judgment upon the whole evidence, without any presumption in favor of the conclusion reached below. McMillan v. Fabretta, 231 Ala. 188, 163 So. 793; Farmer v. Johns-McBride Engineering Service, 256 Ala. 335, 54 So.2d 708.

Again, it is said that there is no record evidence to sustain our observation that the charter issued by the Grand Lodge of Alabama to Hermione Lodge No. 16 had

been destroyed after its surrender to and revocation by the Grand Lodge. Supportive of this statement is the testimony of appellant's witness Yarbrough, who had occupied two of the highest offices of the Grand Lodge, and who served in these capacities at periods contemporaneous with transactions relating to the matter involved, viz.:

"Q. Have you searched through the records that were in your possession for a charter of the Hermione Lodge No. 16? A. I have.

"Q. You have not been able to find it? A. No, not that, or any other papers of the subordinate lodges who were forfeited. *They were all destroyed* as the lodges became defunct and the charter revoked.

"Q. *All destroyed?* A. Yes, sir.

"Q. You have looked for this one? A. I did.

"Q. You were unable to find it? A. No, sir." (Italics ours.)

■ Finally, it is urged upon us as a ground for the application for rehearing that there is no *legal* evidence tending to establish the material allegations of the cross-bill. The point most stressed in argument is that "Printed copies of the Constitution and By-laws of a Beneficial Order promulgated by the Supreme Lodge and used by the officers and members of the local lodges in the transaction of business *are not admissible in evidence to prove the laws of the Order.*" 2 Ency. of Evidence 586; Herman v. Supreme Lodge K. of P., 66 N.J.L. 77, 48 A. 1000, are cited. And it is urged that "all of the records" introduced "were inadmissible." To be exact, the foregoing is the substance of the argument in brief. No particular item of the evidence is singled out, all of them treated as a whole. But few, if any, of the exhibits fall within the stated category. To take up each one of the numerous exhibits, analyzing and classifying them, and to give expression to the voluminous testimony otherwise, in the light of which they must necessarily be considered and weighed, would extend this opinion to interminable length. Indeed, as we have in-

terpreted the statute relating to the trial and review of equity cases, we are under no such requirement. Code 1940, Title 7, § 372(1), 1951 Cum.Pocket Part, Vol. 2, p. 59; Redwine v. Jackson, 254 Ala. 564, 49 So.2d 115. With the statute and our interpretation of it in mind, we proceeded on original consideration, and again on rehearing, to a painstaking examination of the whole evidence, the exhibits and that otherwise appearing, and reached the conclusion that there was sufficient "relevant, material, competent and legal" evidence to sustain the material allegations of the cross-bill and to convince us that the decree appealed from was opposed to the great weight of such evidence. So we must, of necessity, invoke the statute, supra, which relieves this court of the duty "to point out what testimony or evidence should be excluded or not considered."

■ We discovered none of the instruments, documents or exhibits offered by appellant which might be said to be altogether inadmissible as original or secondary evidence. Some were in the form of "ancient" documents, others both ancient and "historical" works. Some were in the form of charters either to the grand lodge or the subordinate lodge. Some were in the form of statutes, such as the acts of congress incorporating the supreme order, and act of the legislature of this state incorporating the grand lodge. Some were in the form of applications for membership in the lodge and order. Numerous documents were in the form of original reports made by the appellee lodge to the grand lodge. Some of the documents, among them those purporting to be constitutions of the grand or supreme lodge, bore evidence of authentication. Some, upon introduction, were referred to as "original." If the matter of sufficiency of preliminary evidence warranting secondary evidence be comprehended in appellee's argument, we observe that much evidence was adduced which tended to show loss by fire or by destruction otherwise of the original documents or items of evidence. As we pointed out in J. R. Watkins Co. v. Goggans, 242 Ala. 222, 5 So.2d 472, what is sufficient as preliminary proof for the in-

troduction of secondary evidence is necessarily addressed largely to sound judicial discretion; and, where such evidence is voluminous, it is not necessary that we reproduce all of it in our opinion.

We may observe that much of the evidence brought forward by the appellant was cumulative. Constitutions, rules and by-laws are set forth not in one but in several of the exhibits, sometimes as readoptions. This is but added ground for our conclusion that one or more of the exhibits might be of questionable admissibility and yet there would remain sufficient admissible evidence of the matter.

We may observe further that, while the incorporation of Hermione Lodge is clearly proved, there is an abundance of evidence leading to the inescapable conclusion that it had been instituted as a subordinate lodge, was later granted a charter (later taken up and revoked), and operated as a part of the parent order throughout its active existence. Even the lodge seal, appearing on many of the documents, recites the date of its "institution," along with the date of its incorporation. The only evidence of nonexistence of the charter is negative in character, such as that certain of appellee's witnesses never saw or knew of a charter granted by the grand lodge. There is no countervailing evidence whatsover with respect to the legal aspects of the supreme and grand lodge—prohibiting distribution of assets of a defunct lodge—or the rules and regulations of the supreme and grand lodge.

Upon a minute re-examination of the whole record, giving careful attention to each contention presented by the application for rehearing and supporting brief, we find nothing reflecting upon our original conclusion. The application for rehearing is, therefore, overruled.

Application overruled.

LIVINGSTON, C. J., and BROWN, LAWSON and GOODWYN, JJ., concur.

On Second Rehearing

Rehearing opinion corrected and application overruled.

All the Justices concur.