163 So. 793

## McMILLAN v. FABRETTA.

### 6 Div. 689.

Supreme Court of Alabama.

June 6, 1935.

Rehearing Granted Oct. 10, 1935.

Rehearing Denied Nov. 7, 1935.

Cabaniss & Johnston and Jos. F. Johnston, all of Birmingham, and McMillan & Caffey, of Brewton, for appellant.

Harsh, Harsh & Hare, of Birmingham, for appellee.

THOMAS, Justice.

A reconsideration of this case on rehearing has convinced us that the conclusion first announced is erroneous and should be set aside.

■] Preliminary to a decision on the merits, we notice two questions raised by appellee relating to the nature and extent of review on this appeal. It is first objected that appellant's brief violates Supreme Court Rule 10, in that the assignments of error are not separately treated and argued, but that the whole argument is made without reference to the assignments. Whether or not the brief is subject to this criticism, this objection is unavailing to prevent a consideration of the argument made by appellant. The record is short and simple; the few assignments of error relate to a single question—the propriety of the judgment. Reference to the assignments separately is not essential to an understanding of the argument, and in such circumstances this court will condone a failure of strict compliance with the rule. Brothers v. Brothers, 208 Ala. 258, 94 So. 175.

■ The second question raises the point that a review by the appellate court of the evidence is limited where, as here, the trial court made a special finding of facts upon the request of one of the parties. As to this the appellee, rather than insisting upon a rule that where such special finding is made the appellate court is limited to a determination of whether or not the facts as found support the judgment entered, calls attention to confusion between several of our decisions dealing with the subject. This question is no longer an open one. .

"Under existing statutes this court reviews a trial without a jury on the facts and evidence shown by the bill of exceptions, and is not now as formerly confined to the facts as specially found." United States F. & G. Co. v. Yeilding Bros. Co. Dept. Stores, 225 Ala. 307, 314, 143 So. 176, 181.

The plaintiff operated a shop, in the city of Birmingham, Ala., dealing in women's apparel of the more expensive sort. The defendant and his wife resided in Pensacola, Fla. Some time prior to 1929 defendant's wife became a patron of plaintiff's establishment, and in that year the defendant gave to the plaintiff a written guaranty for his wife's purchases. While the plaintiff's evidence tends to show that credit was extended to the defendant or on the faith of his rating, the account stood in the name of his wife. So far as we are able to determine, no statements of account were rendered to the defendant and no payments on account were made by him; all such dealings being with and by the wife. But in the spring or summer of 1930 the plaintiff turned over to an attorney the account then due, and defendant was called upon to make settlement. After some negotiations defendant paid the account but imposed a condition that his agreement of guaranty be canceled and that no further

goods be furnished to the wife on defendant's credit. In acknowledging receipt of payment of the account then in controversy, plaintiff's attorney, by letter, represented that plaintiff had been definitely informed of defendant's withdrawal of his agreement. Plaintiff testified that she had no knowledge of the contents of this letter written by her attorney, but other evidence shows unmistakably that plaintiff was aware and took notice of defendant's withdrawal of guaranty. Whether or not dealings between the plaintiff and defendant's wife continued without interruption and, if so, the extent and nature thereof, is not clear to us. Nor do we regard this as of importance, since the matters here involved are dealings and purchases occurring in the year 1932. Plaintiff exhibited an account running through that year and claimed a balance due thereon. By the evidence adduced on the trial and by the argument on appeal, plaintiff bases her right of recovery against the defendant husband upon one of two theories—or both. One of these theories is the common-law liability of the husband; the other liability resulting from a previous assent to or ratification of the purchases made by the wife. From the special finding it would appear that the trial court concluded liability upon both theories.

 Under the common law it is the duty of the husband to support the wife, and along with this duty there is a well-recognized general rule of liability for necessaries furnished to the wife by third parties. This rule is grounded upon the failure, refusal, or neglect of the husband to supply the wife with necessaries suitable to his circumstances and condition in life. Failing in his legal duty, the wife may, while cohabiting with him, bind him by contracts made with third persons for such necessaries, even though they be furnished against the husband's will. Nor is his liability dependent upon either the fact that the wife has no separate property or the fact that she is without capacity to contract. It is not confined to those bare essentials of life, but is extended to cover those necessaries which are suitable to the circumstances and conditions of the parties. 30 C. J. pp. 589, 590. As was held by this court in Ponder v. Morris & Bros., 152 Ala. 531, 534, 44 So. 651, 652: "Notwithstanding the wife, under our statute, may contract and be contracted with, and be sued upon such contracts, still this does not take

away the common-law liability of the husband for necessary comforts and supplies furnished the wife, suitable to their condition and degree in life."

] But this rule is subject to certain limitations. We approve the following from the text of 30 C. J. p. 590: "However, the husband is not ipso facto liable for all necessaries that may be furnished the wife. He is not liable for the price of goods which are within the general description of necessaries and which have been purchased by the wife, where he has performed his duty of furnishing necessaries, either by personally supplying them or by providing the wife with sufficient means to purchase them, and where he has not previously authorized or subsequently ratified the purchase in question. In such case, there is no necessity entitling the wife to pledge the husband's credit."

 The defendant's wife purchased from the plaintiff alone in the neighborhood of $6,000 worth of wearing apparel, for her exclusive use, during the year 1932. This did not include her shoes. The sum total of the particular account involved was some $5,400 with a balance due—and for which the suit was brought—of a little more than $2,600. The evidence is not sufficient upon which to fix a very satisfactory estimate of the husband's financial condition; but we may concede that he was worth in the neighborhood of $1,000,000. That he lived in a "fine" home and moved upon a high social plane are facts not controverted. But the evidence is without dispute that during the period covered by the account involved his allowance to his wife was $1,000 monthly. While it was paid to her by two checks, one for $600 intended to be used by her in defraying household expenses, and the other for $400 intended as her personal allowance, it appears that the checks were not "labeled" and that her disbursements were in no manner supervised. For aught appearing her expenditures on either account were what she chose to make them. The only evidence relating to the husband's income was the testimony of his trustee or business manager, that for the year 1932 the income of the defendant was $3,300, from investments. On the showing made, we think the plaintiff has failed to establish one element essential to the right of the wife to pledge the husband's credit and of consequence to render him liable, namely, the failure, neg-

lect, or refusal of the husband to supply the wife with necessaries.

■ But there is a more impelling reason why the rule as to the common-law liability of the husband for necessaries cannot be here invoked. As indicated hereinabove, the account from its inception stood in the name of the wife; bills were without exception rendered to the wife and not to the husband; and all payments thereon were made by the wife, save only the one which the husband was forced to make in 1930. In the beginning the husband was asked, not permission for the wife to pledge his credit, but a guaranty of the account of the wife. And that is what he gave, and what he withdrew following the incident in 1930. The account as continued or resumed thereafter was likewise in the name of the wife; bills were rendered to her alone; the wife alone made payments; notes were taken by the plaintiff from the wife to secure the final balance; no demand for payment was made upon the husband until the suit was filed.

In Gafford v. Dunham, 111 Ala. 551, 553, 554, 20 So. 346, 347, we held: "The common-law liability of the husband for necessaries and suitable comforts has always rested upon the assumption that credit was given to the husband, and not to the wife, and that the purchase was made with his implied assent. In no case did this liability arise when the facts showed affirmatively that credit was given to the wife, and charged to her, and not to the husband, and the goods were sold not upon his implied assent that they were to be charged to him."

The rule of the Gafford Case, supra, is in harmony with the general trend of decisions in other jurisdictions. 30 C. J. p. 600, § 140, and cases cited under note 52.

■ We have not overlooked the matter of assent or ratification on the part of the husband, which would have rendered him liable irrespective of the nature of the purchases made by the wife, whether necessaries or not, and of the fact that credit was extended primarily to the wife. Landgrof v. Tanner, 152 Ala. 511, 44 So. 397. We are, however, clearly convinced from a careful consideration of the entire evidence that the plaintiff failed to show either an assent or ratification in such sort as to bind the defendant. There was evidence that the husband was aware of the condition of the wife's apparel and that she was as well dressed after the incident in 1930 when he withdrew his guaranty as before. But this awareness cannot be made the basis of assent in the face of the undisputed fact that his allowance made to her continued to be what it had been, without abatement or reduction. The only other evidence tending to show assent or ratification is found in the testimony of the wife of defendant, testifying as a witness for plaintiff. The effect of this was that in the late summer or fall of 1932, when she went to Birmingham to purchase fall clothing, she was accompanied by her husband. She proceeded to plaintiff's shop and made considerable purchases and on the following day returned there, accompanied by her husband. At this time plaintiff's manager referred to the fact that the defendant had notified plaintiff that he supplied his wife with an ample allowance for her clothing, or an allowance with which to pay her own bills, and thereupon said to the defendant: "Suppose that allowance ceases." In reply the defendant is said to have answered, "Then I will pay direct," or words to that effect. On cross-examination, the wife testified that defendant did not say he would pay the account if the allowance ceased; that nothing was said about guaranteeing anything; that no stipulation was made. In fact, it is evident that if the conversation occurred at all— this in view of the fact that defendant denied it—it was more in the nature of a pleasantry. The witness (the wife) says that the manager "laughingly" referred to the word "allowance" and then said: "Suppose the allowance ceases." If defendant in fact said he would pay direct in event he stopped the allowance, then plaintiff was not authorized to construe this in any other manner than that he would either give his wife an allowance or pay for her needs himself; certainly so in the light of all that had gone before and of which the plaintiff and her manager had knowledge. And without dispute the allowance was never abated or reduced during the period covered by the account. Subsequent dealings serve to refute the idea of a guaranty or the reliance by plaintiff upon any sort of assent or ratification by defendant. Over a period of some six months purchases aggregated more than $5,000. While payments were erratic, large purchases being made when considerable balances remained in arrears, and even some checks given by the wife by way of payment on account being returned dishonored, still the plaintiff dealt exclusively

with the wife, rendering statements to her alone, and in the end she took the wife's notes in final settlement.

It results that under no theory was the plaintiff entitled to recover against the defendant. The rehearing is, therefore, granted; the judgment of affirmance heretofore entered is set aside. . The judgment of the circuit court is reversed and a judgment will be here entered for the defendant.

Rehearing granted; reversed and rendered.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.