280 So.2d 758

**Charles A. WOLFE, who sues as father of Deceased Polly Jane Wolfe**

**v.**

**Linda Sue ISBELL et al.**

**SC 200.**

Supreme Court of Alabama.

July 12, 1973.

Roscoe B. Hogan, Birmingham, for appellant.

Rives, Peterson, Pettus, Conway & Burge, Birmingham, for appellees.

McCALL, Justice.

The defendants appellees have moved this court to strike appellant's brief or for affirmance of the case or for dismissal of the appeal. They assign as grounds that the brief of the appellant contains no Statement of the Case as required by Supreme Court Rule 9 and that the Statement of Facts is merely argument and does not specifically refer to any one ground of demurrer as being erroneously sustained.

This appeal is taken because of the adverse ruling on a demurrer to the complaint. While we cannot approve of the omissions made in the brief, the sole issue is so clearly formulated, we have no difficulty in readily understanding the point involved from the brief. This court has properly held that it will give a liberal application to its Rules and will condone noncompliance when the record is short and simple, and when compliance with the cited rules is not essential to an understanding of the argument. Kendall Alabama Company v. City of Fort Payne, 262 Ala. 465, 79 So.2d 801; McMillan v. Fabretta, 231 Ala. 188, 163 So. 793; Brothers v. Brothers, 208 Ala. 258, 94 So. 175; City of Montgomery v. Mott, 266 Ala. 422, 96 So. 2d 766. The motion is denied.

In this case the father sues to recover damages for the death of his minor child allegedly caused by the wrongful act, omission, or negligence of the defendants. From an adverse ruling on the defendants' demurrer to the single count complaint, the plaintiff took a nonsuit and now appeals.

We are concerned with the sole question of whether or not a tort action can be maintained by the father to recover damages for the wrongful death of his minor child, resulting from prenatal injuries, negligently inflicted while a nonviable fetus, if the injured child is subsequently born alive. By nonviable we mean not capable of living, growing, or developing and functioning successfully, the antithesis of viable, which is defined as having attained such form and development of organs as to be normally capable of living outside the uterus. See Webster's Third New International Dictionary. At the outset all must realize that possessing a good cause of action and pleading it is one consideration, while the problem of proof of the allegations is an entirely separate and distinct consideration. Here, only the former consideration invokes our attention.

The gravamen of the plaintiff's complaint is that, on to-wit, March 10, 1970, the defendants so negligently operated a truck as to negligently cause or negligently allow it to back into or collide with an automobile, on a public street in Pell City, Alabama, in which the plaintiff's wife was seated, she being then pregnant with the plaintiff's unborn child, and as a proximate consequence thereof, the said minor child, being then carried as an unborn child by his wife, suffered grievous prenatal injuries and prenatal damages from which she subsequently died on to-wit, June 16, 1970, approximately fifty minutes after being born alive on said date and occasion.

There are fifteen grounds of demurrer assigned, separately and severally, by the defendants to this count. The gist of the grounds of demurrer is that it affirmatively appears from the averments of the count or complaint that the plaintiff's unborn child was not a minor child at the time of the alleged negligence so as to give the plaintiff a cause of action on account of the alleged injuries negligently inflicted upon her, resulting in her death after being born alive.

While we approached the question here involved in Huskey v. Smith, 289 Ala. 52, 265 So.2d 596, a decision of the issue was never reached because there we were dealing with a viable child. But in *Huskey*, we overruled our former case of Stanford v. St. Louis-San Francisco Ry. Co., 214 Ala. 611, 108 So. 566 (1926), which stood as authority for the proposition that a prenatal injury afforded no basis for an action in damages in favor either of the child or its personal representative, and we recognized the right to recover for the wrongful death of a viable child because it existed separate and apart from the mother, but within her body. Furthermore, we said: "[T]o give further force to Stanford would give protection to an alleged tortfeasor." We had previously held in *Stanford*, supra, that a fetal child was a part of the mother and was not a "person" until it was born. See also Dietrich v. Northhampton, 138 Mass. 14, 52 Am.Rep. 242, and Allaire v. St. Luke's Hospital, 184 Ill. 359, 56 N.E. 638, both of which have essentially been overruled. We said in *Huskey*, supra, that this holding in *Stanford* was based upon an incorrect statement of medical fact. We held in *Huskey* that where the mother was seven and one-half months pregnant, and five days after the accidental injury, the child was born alive, but died five days after birth, it was error to deny a parent or legal representative the right to proceed in a wrongful death action. Thus the theory of the right to recover in *Huskey* was that the child was not a part of the mother contra to *Stanford*. We left undecided the question of whether a previable child, who was subsequently born alive, was a part of the mother. In a footnote to *Huskey*, we also pointed out that it was not necessary to decide in that cause whether an action for personal injury or wrongful death would exist, if inflicted before the fetus became viable.

The defendants differentiate the instant case from that of *Huskey*, where there was a viable fetus, on the ground that here,

construing the complaint more strongly against the pleader, we are to assume, for testing the complaint only, a negligent injury to a nonviable fetus for which the defendants contend that there can be no recovery for damages by the father on account of wrongful death, although the child is born alive. Thus the defendants contend that the right of action for prenatal injuries, if any, is limited to children, born alive, who, at the time of the injury, were alive and capable of being delivered and of remaining alive separate from their mothers. Apparently the defendants' defense is that they owed no duty to the nonviable fetus as a minor child under the statute, Tit. 7, § 119, Code of Alabama, 1940. On this subject, Prosser in his Law of Torts, 4th Ed., p. 336, says: "So far as duty is concerned, if existence at the time is necessary, medical authority has recognized long since that the child is in existence from the moment of conception, and for many purposes its existence is recognized by the law." Citing Herzog, Medical Jurisprudence, 1931, §§ 860–975; Malloy, Legal Anatomy and Surgery, 1930, 669–687. And Prosser adds: "All writers who have discussed the problem have joined in condemning the old rule [that the defendant could owe no duty of conduct to a person who was not in existence at the time of the action], in maintaining that the unborn child in the path of an automobile is as much a person in the street as the mother, and in urging that recovery should be allowed upon proper proof."

■ Generally speaking, it is essential to the maintenance of an action for death by wrongful act or default that the act or default be of such character as would have supported an action by the deceased for his injuries if he had survived. If the deceased never had a cause of action, none accrues under a wrongful death statute. Owens v. Auto Mutual Indemnity Co., 235 Ala. 9, 177 So. 133; Harris v. A. J. Spencer Lumber Co., 185 Ala. 648, 64 So. 557; Lovell v. DeBardelaben Coal and Iron Co., 90 Ala. 13, 7 So. 756. On this point it is stated in Harris v. McNamara, 97 Ala. 181, 183, 12 So. 103, 104, as follows:

" * * * Nor does it matter that the parent sues, instead of the injured party in case of injury merely, or the personal representative in case of death. The basis of the action is the wrong done the injured party, and the right to redress that wrong which the statute confers upon the parent in case of death, is not more enlarged than that which would belong to the deceased himself if death had not resulted, and he were suing for the personal injury. * * * "

■ It follows that the right to maintain an action for the wrongful death of an unborn child depends on the right of the particular child, if he had survived, to maintain an action for injuries sustained.

■ The plaintiff's position is that it makes no difference, in deciding the right to a cause of action for wrongful death, whether the fetal child was viable or not when the injury was inflicted, if the child was subsequently born alive but died from the injury. Under the pleadings it appears that, whether viable or nonviable, had it not been for the wrongful prenatal injury, the fetal child would have sustained life. The fact appears from the complaint that the child was born alive and shortly thereafter died because of the prenatal injury. In other words, under the allegations of the complaint, life would have been sustained but for the negligence of the defendants that proximately caused the injury from which the child subsequently died after being born alive.

While the decisions dealing with the problem before us are certainly not without divergent views, the more recent authorities emphasize that there is no valid medical basis for a distinction based on viability, especially where the child has been born alive. These proceed on the premise that the fetus is just as much an independent being prior to viability as it is afterwards, and that from the moment of conception,

the fetus or embryo is not a part of the mother, but rather has a separate existence within the body of the mother.

Though unnecessary to a decision in Puhl v. Milwaukee Auto Ins. Co., 8 Wis.2d 343, 99 N.W.2d 163 (1959), the court pointed out that the viability theory, permitting actions for injuries to viable unborn children, but not to nonviable children has been challenged as unrealistic in that it draws an arbitrary line between viability and nonviability, and fails to recognize the biological fact that there is a living human being before viability. The court said in that case that a child is no more a part of its mother before it becomes viable that it is after viability, and that it would be more accurate to say that the fetus from conception lived within its mother rather than as a part of her.

And, we quote Prosser, 4th Ed. (1971), p. 337 on the subject:

"There is something to be said on both sides of this. Viability of course does not affect the question of the legal existence of the foetus, and therefore of the defendant's duty; and it is a most unsatisfactory criterion, since it is a relative matter, depending on the health of mother and child and many other matters in addition to the stage of development. Certainly the infant may be no less injured; and all logic is in favor of ignoring the stage at which it occurs. But with our knowledge of embryology what it is, as we approach the beginning of pregnancy medical knowledge, and therefore medical testimony and medical proof of causes, becomes increasingly unreliable and unsatisfactory, so that there is good reason for caution. This, however, goes to proof rather than principle; and if, as is undoubtedly the case there are injuries as to which reliable medical proof is possible, it makes no sense to deny recovery on any such arbitrary basis."

Originally the view of the Restatement of Torts was consistent with the early opinions on this matter holding that "a person who negligently causes harm to an unborn child is not liable to such child for the harm." Id., § 869 (1938). However, this view has apparently been changed to reflect what we have recognized as the judicial trend toward allowing recovery for prenatal injuries. In its more recent opinion the American Law Institute has rejected the viability criteria and opted merely for the requirement of live birth as the basis of the cause of action. See Restatement (Second) of Torts, § 869, p. 174–182 (Tent.Draft No. 16, 1970). The section as adopted at the 47th Annual Meeting of the ALI is as follows:

"(1) One who tortiously causes harm to an unborn child is subject to liability to the child for such harm if it is born alive.

"(2) If the child is not born alive, there is no liability unless the applicable wrongful death statute so provides." Tent.Draft, supra, at 174. See 47 ALI Proceedings, 371–377 (1970).

The Supreme Court of Georgia said in Hornbuckle v. Plantation Pipe Line Company, 212 Ga. 504, 93 S.E.2d 727:

"* * * At what particular moment after conception, or at what particular period of the prenatal existence of the child the injury was inflicted is not controlling, for, as was said in Morrow v. Scott, 7 Ga. 535, 537, 'In * * * general, a child is to be considered as in being, from the time of its conception, where it will be for the benefit of such child to be so considered.' While we realize that cases such as this might present extreme difficulties as to proof, we are not concerned with that question here. The petition alleges that the plaintiff, who is now in life, received prenatal injuries caused by the alleged negligent operation of an automobile by the defendant, which caused it to collide with the automobile in which the plaintiff's mother was riding while pregnant, which resulted in the plaintiff being born with

a deformed right foot, right ankle, and right leg, and in passing upon the demurrer these allegations must be taken as true. If a child born after an injury sustained at any period of its prenatal life can prove the effect on it of a tort, it would have a right to recover. * * *"

In *Hornbuckle,* supra, Georgia followed Kelly v. Gregory, 282 App.Div. 542, 125 N.Y.S.2d 696, which held that where a child is born after a tortious injury sustained at any period after conception, he has a cause of action, the court saying:

"If the child born after an injury sustained at any period of his pre-natal life can prove the effect on him of the tort, * * * we hold he makes out a right to recover." *Kelly,* supra, 125 N.Y.S.2d at 698.

The Supreme Court of Canada in Montreal Tramways v. Leveille [1933] S.C.R. 456, 4 D.L.R. 337 in allowing recovery for prenatal injuries based its decision on the general prenatal rights of an injured person and not upon whether the injury had occurred after the biological point of viability had been reached.

The opinion of the New Hampshire Supreme Court in Bennett v. Hymers, 101 N.H. 483, 147 A.2d 108, 110 follows much of the reasoning in the Hornbuckle case supra. In *Bennett* the court said:

"We hold therefore that an infant born alive can maintain an action to recover for prenatal injuries inflicted upon it by the tort of another even if it had not reached the state of a viable fetus at the time of injury. We so decide because we see no logical reason for not extending the protection of the law of torts to it and are impressed by the harshness of the opposite result. We recognize that there may be difficulty in proving causation and that such a holding may give rise to fictitious claims. However this difficulty and this danger are not peculiar to this type of action and do not appear to be so much greater than in the case of many other matters of medical opinion on the causal sequence of events. Our holding, that if a child born alive after an injury sustained at any period of its prenatal life can prove the damage was caused by the tort it makes out a right to recover, is in accord with certain recent judicial opinions, modern medical science and the view of many writers on the law of torts. * * *"

In Smith v. Brennan, 31 N.J. 353, 157 A.2d 497, the court held that the distinction based on viability has no real justification and has no place in the determination of the question of liability for wrongful conduct. The court said:

"* * * Medical authorities have long recognized that a child is in existence from the moment of conception, and not merely a part of its mother's body. * * *.

\* \* \* \* \* \*

"We see no reason for denying recovery for a prenatal injury because it occurred before the infant was capable of separate existence. In the first place, age is not the sole measure of viability, and there is no real way of determining in a borderline case whether or not a fetus was viable at the time of the injury, unless it was immediately born. Therefore, the viability rule is impossible of practical application * * *."

On the question of the viability distinction, the Supreme Court of Pennsylvania in Sinkler v. Kneale, 401 Pa. 267, 164 A.2d 93, said:

"As for the notion that the child must have been viable when the injuries were received, which has claimed the attention of several of the states, we regard it as having little to do with the basic right to recover, when the foetus is regarded as having existence as a separate creature from the moment of conception. * * *"

We see no sound reason why the same rule of law in prenatal injury cases, permitting the minor child to recover, should not also apply in actions brought by the father under Tit. 7, § 119, Code of Alabama, 1940, because this statute affords the father the same right of action, in cases where death ensues, as the child would have had, if it had survived.

In Torigian v. Watertown News Co., Inc., 352 Mass. 446, 225 N.E.2d 926, the court said:

"In the vast majority of cases where the present issue has arisen, recovery has been allowed. Hornbuckle v. Plantation Pipe Line Co., 212 Ga. 504, 93 S.E. 2d 727; Daley v. Meier, 33 Ill.App.2d 218, 178 N.E.2d 691; LaBlue v. Specker, 358 Mich. 558, 100 N.W.2d 445; Bennett v. Hymers, 101 N.H. 483, 147 A.2d 108; Smith v. Brennan, 31 N.J. 353, 157 A.2d 497; Kelly v. Gregory, 282 App.Div. 542, 125 N.Y.S.2d 696; Sinkler v. Kneale, 401 Pa. 267, 164 A.2d 93. See Puhl v. Milwaukee Auto. Ins. Co., 8 Wis.2d 343, 354–357, 99 N.W.2d 163. To the extent that the views of textwriters and legal commentators have come to our attention, they are unanimously of the view that nonviability of a fetus should not bar recovery. Harper and James, Torts, § 18.3. Prosser, Torts (3d ed.) § 56. 63 Mich.L.Rev. 579, 589–590. 110 U. of Pa. L.Rev. 554, 562–564. 18 Vand.L.Rev. 847, 852–854. 1962 Wis.L.Rev. 150."

The Rhode Island case of Sylvia v. Gobeille, 101 R.I. 76, 220 A.2d 222 (1966), involved a personal injury issue but expressly rejected the viability test as a condition of recovery. The court in Sylvia however overruled its earlier decision in Gorman v. Budlong, 23 R.I. 169, 49 A. 704 (1901), which had disallowed a suit for wrongful death caused by prenatal injury. And in LaBlue v. Specker, 358 Mich. 558, 100 N.W. 2d 445 (1960), viability was rejected as a condition precedent to recovery by a child for the wrongful death of its father. Even though the child was not born at the time

of the death of the father it was held to be a "person" or "child" for purposes of suit.

There are other instances of long standing in our law where an unborn child is treated as one "in being" even from conception. Tit. 47, § 20, Code of Alabama, 1940 (Recomp.1958) provides for legal recognition of posthumous children in the taking of future estates in lands. Accordingly the predecessor section in the 1923 Code, § 6906, was construed in Barnett v. Pinkston, 238 Ala. 327, 191 So. 371 (1939) to hold that a child born alive two to three months after the death of its father was "regarded in law as a living child at the death of the father." This court said further that "a child en ventre sa mere shall be considered in esse for most purposes of property." Barnett, 238 Ala. at 331, 191 So. at 374. In Barnett, supra, it was recognized that a child en ventre sa mere has the capacity to inherit property. No requirement was set forth that the child be viable before possessing such capacity; it merely was enough that the child was born alive. A subsequent article encompassing matters relating to that case has defined posthumous children as in Barnett and in the Code as "a child conceived but not born at the time of the testator's death." Holt, Intestate Succession in Alabama, 23 Ala.L. Rev. 319, 323 (1971). In Pearson v. Carlton, 18 S.C. 47 (1882), it was said that the doctrine that "posthumous children inherit in the same manner as if they had been born in the lifetime of their father, and were surviving heirs; * * * is universally adopted in the United States. And this relates back to the conception of the child, if it is born alive." Pearson, 18 S.C. at 55. (Emphasis added). These cases are guiding in that they show certain legal capabilities which relate to the entire time of a child's fetal development.

To say now that a child will be recognized as alive and capable of inheriting, and later taking possession of property when born alive, but not recognized as alive for the purpose of sustaining injuries for which suit might be brought if they

**334**

wrongfully cause its death is an incongruous result.

 We hold, therefore, that sustaining the demurrer to this complaint is not consistent with the more current judicial thought on this subject in this and other jurisdictions. For the reasons set forth the decision of the trial court is to be reversed.

Reversed and remanded.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and JONES, JJ., concur.