MOORE, Chief Justice
(concurring specially).
I concur with the main opinion and with Justice Parker’s specially concurring opinion, which rightly notes that “[bjecause an unborn child has an inalienable right to life from its earliest stages of development, it is entitled ... to a life free from the harmful effects of chemicals at all stages of development.” 153 So.3d at 83-84.1 write separately to emphasize that the inalienable right to life is a gift of God that civil government must secure for all persons— born and unborn.

I: Our Creator, Not Government, Gives to All People “Unalienable” Natural Rights.

According to our Nation’s charter, the Declaration of Independence, the United States was founded upon the “self-evident” truth that “all Men are created equal, [and] that they are endowed by their Creator with certain unalienable Rights.” Declaration of Independence, ¶ 2 (1776). Denominated in the United States Code Annotated as one of the “Organic Laws of the United States of America,” the Declaration acknowledges as “self-evident” the truth that all human beings are endowed with inherent dignity and the right to life as a direct result of having been created by God. When it was signed by our Founding Fathers in 1776, the Declaration returned to first principles of God, His law, and human rights and government.
As Thomas Jefferson explained, “[t]he object of the Declaration of Independence” was “[n]ot to find out new principles, or new arguments, never before thought of ... but to place before mankind the common sense of the subject, in terms so plain and firm as to command their assent .... [I]t was intended to be an expression of the American mind.”[5] Thomas Jefferson, *67 Letter to Henry Lee, May 8, 1825, in VIII The Writings of Thomas Jefferson 407 (HA. Washington ed., 1854). The American mind of the founding era had been nurtured in its views of law and life by the most influential legal treatise of the time, Sir William Blackstone’s Commentaries on the Laws of England (1765). See, e.g., District of Columbia v. Heller, 554 U.S. 570, 593-94, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) (recognizing Blackstone’s work as “ ‘the preeminent authority on English law for the founding generation’ ” (quoting Alden v. Maine, 527 U.S. 706, 715, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999))). Blackstone recognized that God’s law was superior to all other laws:
“This law of nature, being co-eval [beginning at the same time] with mankind and dictated by God himself, is of course superior in obligation to any other. It is binding over all the globe, in all countries, and at all times: no human laws are of any validity, if contrary to this.... ”
1 William Blackstone, Commentaries at *41 (emphasis added). See also id. at *42 (“Upon these two foundations, the law of nature and the law of revelation, depend all human laws; that is to say, no human laws should be suffered to contradict these.”).
Like Jefferson, Alexander Hamilton defended American independence based on the “law of nature” and emphasized that divine law was the source of our human rights:
“[T]he Deity, from the relations we stand in to Himself and to each other, has constituted an eternal and 'immutable law, which is indispensably obligatory upon all mankind, prior to any human institution whatever.
“This is what is called the law of ■ nature_
“Upon this law depend the natural ' rights of mankind .... ”
Alexander Hamilton, “The Farmer Refuted,” in 2 The Works of Alexander Hamilton 43 (John C. Hamilton ed., 1850) (emphasis added). According to Blackstone, God, not governments and legislatures, gives persons these inherent natural rights:
“Those rights then which God and nature have established, and are therefore called natural rights, such as are life and liberty, need not the aid of human laws to be more effectually invested in every man than they are; neither do they receive any additional strength when declared by the municipal laws to be inviolable.”
1 Commentaries at *54 (emphasis added). Government, in fact, has no “power to abridge or destroy” natural rights God directly bestows to mankind, id., and, indeed, no power to contravene what God declares right or wrong:
“The case is the same as to crimes and misdemeanors, that are forbidden by the superior laws, and therefore st[y]led mala in se, such as murder, theft, and perjury; which contract no additional turpitude from being declared unlawful by the inferior legislature. For that legislature in all these cases acts only ... in subordination to the great lawgiver, transcribing and publishing his precepts.”
Id. Therefore, as stated by James Wilson, one of the first Justices on the United *68 States Supreme Court: “Human law must rest its authority ultimately upon the authority of that law which is divine.” James Wilson, “Of the General Principles of Law and Obligation,” in 1 The Works of the Honourable James Wilson, L.L.D., 104-05 (Bird Wilson ed., 1804) (hereinafter “Works of James Wilson ”).
II. The Right to Life is an “Unalienable” Gift of God.
The first right listed in the Declaration as among our unalienable rights is the right to “Life.” Blackstone wrote that “[l]ife is the immediate gift of God, a right inherent by nature in every individual; and it begins in contemplation of law as soon as an infant is able to stir in the mother’s womb.”[6] 1 Commentaries at *125. See also id. at *126 (stating that an infant “in the mother’s womb, [was] supposed in law to be born” for various legal purposes and rights, e.g., legacy and guardianship). As the gift of God, this right to life[7] is not subject to violation by another’s unilateral choice: “This natural life being, as was before observed, the immediate donation of the great creator, cannot legally be disposed of or destroyed by any individual, neither by the person himself nor by any other of his fellow creatures, merely upon their own authority.” Id. at *129 (emphasis added). Even the United States Supreme Court has recognized that “‘[tjhe-right to life and to personal security is not only sacred in the estimation of the common law, but it is inalienable.’ ” Washington v. Glucksberg, 521 U.S. 702, 715, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (quoting Martin v. Commonwealth, 184 Va. 1009, 1018-19, 37 S.E.2d 43, 47 (1946)).

III. All Governments Must Secure God-Given Rights.

Although not the source of our rights, governments are instituted in order to “se *69 cure these rights” given by God, the Declaration continues, and are fashioned by the people “in such form, as to them shall seem most likely to effect their Safety and Happiness.” Thomas Jefferson identified “the first and only legitimate object of good government” to be “[t]he care of human life and happiness, and not their destruction.” Thomas Jefferson, Letter to the Republican Citizens of Washington County, Maryland, Assembled at Hagers-town on the 6th Instant, March 31,1809, in VIII Writings at 165. But what if a government, its positive laws, and “settled” judicial opinions become destructive of these ends, violating the people’s preexis-tent rights to life, liberty, and the pursuit of happiness? We have an illustrative example in the preceding century: the trials at Nuremberg, Germany.

TV. Nuremberg: The Law of Nature Applied Internationally.

When Germany was defeated in World War II, German officers were tried for “war crimes” and “crimes against humanity” in Nuremberg from 1945-46 before an International Military Tribunal formed by France, Great Britain, the United States, and the Soviet Union.[8] See Indictments, Numberg Military Tribunals 3 (Office of Military Gov’t for Germany (US), Nuremberg 1946). The German defendants contended that they were only following orders and the laws of their country and that prosecuting them for crimes not previously specified as crimes in their own country constituted an improper ex post facto application. “Motion Adopted By All Defense Counsel,” Nov. 19, 1945, 1 Trial of the Major War Criminals before the International Military Tribunal 169 (International Military Tribunal, Nuremberg 1947). In his opening statement, however, lead prosecutor Robert Jackson (then an Associate Justice on the United States Supreme Court) argued that “even rulers are, as Lord Chief Justice Coke said to King James, ‘under God and the law.’ ” Robert Jackson, “Opening Statement,” Nov. 21, 1945, in 2 Trial, supra, at 143. Likewise, British prosecutor Sir Hartley Shawcross declared no immunity “for those who obey orders which — whether legal or not in the country where they are issued — are manifestly contrary to the very law of nature from which international law has grown.” Hartley Shawcross, “Closing Arguments,” July 26, 1946, in 19 Trial, supra, at 466. The Nuremberg Court rejected the arguments of the German defendants, noting that “so far from it being unjust to punish [them], it would be unjust if [their] wrong[s] were allowed to go unpunished.” Judgment, “The Law of the Charter,” in 1 Trial, supra, at 219.
Although the Nuremberg defendants were following orders and the laws of their own officials and country, they were guilty of violating a higher law to which all nations are equally subject: the laws of nature and of nature’s God. As Justice James Wilson explained:
“The law of nature, when applied to states or political societies, receives a new name, that of the law of nations....
[[Image here]]
“... Though the law ... receives a new appellation; it retains, unimpaired, its qualities and its power. The law of nations as well as the law of nature is of *70 obligation indispensable: the law of nations, as well as the law of nature, is of origin divine.”
Works of James Wilson at 145-47. The law of nations “depends entirely upon the rules of natural law” such that, even in the construction of compacts and treaties between nations, “we have no other rule to resort to, but the law of nature[,] being the only one to which both communities are equally subject.” 1 Commentaries at *43. See also 2 Samuel Pufendorf, Of the Law of Nature and Nations 150 (1729) (agreeing with Thomas Hobbes that “what ... we call the Law of nature, the same we term the Law of Nations, when we apply it to whole States, Nations, or People”). From local to international, all law “flows from the same divine source: it is the law of God.” Works of James Wilson at 104. The law of nature and of nature’s God therefore binds all nations, states, and all government officials — from Great Britain to Germany to Alabama — regardless of positive laws or orders to the contrary.
V. Alabama Recognizes the Right to Life is “Inalienable. ”
As this Court has recognized, the unalienable right to life is duly secured under Alabama law:
“[T]he Declaration of Rights in the Alabama Constitution ... states that ‘all men are equally free and independent; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty and the pursuit of happiness.’ Ala. Const.1901, § 1 (emphasis added). These words, borrowed from the Declaration of Independence ..., affirm that each -person has a God-given right to life.”
Hamilton v. Scott, 97 So.3d 728, 734 n. 4 (Ala.2012). Alabama statutory law provides that “[t]he public policy of the State of Alabama is to protect life, born, and unborn.” § 26-22-l(a), Ala.Code 1975. In 2006, the Alabama Legislature amended the homicide statute to define “person” to include “an unborn child in útero at any stage of development, regardless of viability,” § 13A-6-l(a)(3), Ala.Code 1975, “ ‘thus recogniz[ing] under that statute that, when an “unborn child” is killed, a “person” is killed.’” Hamilton, 97 So.3d at 739 (Parker, J., concurring specially) (quoting Ziade v. Koch, 952 So.2d 1072, 1082 (Ala.2006) (See, J., concurring specially)).[9] This Court in Ex parte Ankrom, 152 So.3d 397 (Ala.2013), and again today, merely applies equally to born and unborn children the statute prohibiting the chemical endangerment of any child in Alabama, a protection commensurate with the constitutional and statutory protections Alabama gives to all unborn life.

*71
VI. States Have an Affirmative Duty to Protect Unborn Human Life Under the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not “deny to any person within its jurisdiction the equal protection of the laws.” U.S. Const, amend. XIV (emphasis added). “[T]he framers [of the Fourteenth Amendment] attempted to create a legal bridge between their understanding of the Declaration of Independence, with its grand declarations of equality and rights endowed by a Creator God, and constitutional jurisprudence.” The Heritage Guide to the Constitution 400 (Edwin Meese III et al. eds., 2005). The Equal Protection Clause expressly applies to “any person ” within a state’s jurisdiction. By contrast, the Privileges and Immunities Clause applies to “citizens,” namely, “[a]ll persons born or naturalized in the United States....” U.S. Const, amend XIV, § 1 (emphasis added). This definitional distinction necessarily implies that person-hood — and therefore the protection of the Equal Protection Clause — is not dependent, as is citizenship, upon being born or naturalized. See, e.g., Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (“The fourteenth amendment to the constitution is not confined to the protection of citizens”). “The Fourteenth Amendment extends its protection to races and classes, and prohibits any State legislation which has the effect of denying to any race or class, or to any individual, the equal protection of the laws.” Civil Rights Cases, 109 U.S. 3, 31, 3 S.Ct. 18, 27 L.Ed. 835 (1883) (emphasis added). Unborn children are a class of persons entitled to equal protection of the laws.
A plain reading of the Equal Protection Clause, therefore, indicates that states have an affirmative constitutional duty to protect unborn persons within their jurisdiction to the same degree as born persons.[10] “The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state’s jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.” Sunday Lake Iron Co. v. Wakefield Twp., 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918) (quoted in Village ofWillowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)). Any state’s discriminatory failure to provide legal protection equally to born and unborn persons under, for instance, its *72 statutes prohibiting homicide, assault, or chemical endangerment violates, therefore; the Equal Protection Clause of the United States Constitution. See Dobbins v. City of Los Angeles, 195 U.S. 223, 237, 25 S.Ct. 18, 49 L.Ed. 169 (1904) (stating that where a state’s police powers “amount to a denial to persons within its jurisdiction of the equal protection of the laws, they must be deemed unconstitutional and void”). Therefore, the State of Alabama’s application of its chemical-endangerment statute, § 26-15-3.2(a)(l),. Ala.Code 1975, equally to protect born and unborn children is entirely consistent with its constitutional duty under the Equal Protection Clause.

VII. Conclusion.

Under the Equal Protection Clause of the Fourteenth Amendment, states have an obligation to provide to unborn children at any stage of their development the same legal protection from injury and death they provide to persons already born. Because a human life with a full genetic endowment, comes into existence at the moment of conception, the self-evident truth that “all men are created equal and are endowed by their Creator with certain unalienable rights” encompasses the moment of conception. Legal recognition of the unborn as members of the human family derives ultimately from the laws of nature and of nature’s God, Who created human life in His image and protected it with the commandment; “Thou shalt not kill.” Therefore, the interpretation of the word “child” in Alabama’s chemical-endangerment statute, § 26-15-3.2, Ala.Code , 1975, to include all human beings from the moment of conception is fully consistent with these first principles regarding life and law.

. God's creation of man and woman "in His own image,” Genesis 1:27 (King James), together with the divine command, "Thou shalt not kill,” provides the baseline for the right to life. See Exodus 20:13 (King James). Exodus 21 provides express protection for the unborn: where fighting men "hurt a woman with child, so that her fruit depart from her ... [a]nd if any mischief follow, then thou shalt give life for life.” Exodus 21:22-23; see id. (requiring that if "no mischief follow” then the offender must pay a fine). Both testaments attest to the sanctity and personhood of unborn life. See, e.g., Psalm 139:13-15 ("For you formed my inward parts; you knitted me together in my mother’s womb. I praise you, for I am fearfully and wonderfully made. Wonderful are your works; my soul knows it very well. My frame was not hidden from you, when I was being made in secret, intricately woven in the depths of the earth.”); Luke 1:44 (Elizabeth declaring that "the babe leaped in my womb for joy”).

. The crimes against humanity prosecuted at Nuremberg included promoting abortion and even compelling abortion in an attempt to exterminate Poles, Slavs, and others the Nazis considered racially inferior. See Jeffrey C. Tuomala, Nuremberg and the Crime of Abortion, 42 U. Tol. L.Rev. 283 (2011). For example, the Germans were prosecuted at Nuremberg for preventing Poland's courts from enforcing its statute criminalizing abortion. Id. at 376-77.

. ■ Although I was not on the Court when Hamilton was decided, I fully agree with the decision in that case and with Justice Parker's special concurrence describing the invalidity of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), at its inception (or rather, judicial creation) and its complete irrelevance outside the abortion context. I would go further and state that the judicially created "right” to abortion identified in Roe has no basis in the text or even the spirit of the Constitution and is therefore an illegitimate opinion of mere men and not law. See id., 410 U.S. at 174 (Rehnquist, J., dissenting) (describing Roe as finding "within the Scope of the Fourteenth Amendment a right that was apparently completely unknown to the drafters of the Amendment”); Doe v. Bolton, 410 U.S. 179, 221, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (White, J., dissenting) (finding "nothing in the language or history of the Constitution to support the Court's judgments,. ... fashionjjng] and announcing] a new constitutional right”). Roe and its progeny therefore have no applicability in any case, in any context, and, like the German laws nullified at Nuremberg, should be jettisoned from federal and state jurisprudence.

. This principle was violated by the United States Supreme Court in 1973 in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The Court in Roe, ignoring the broad sense of "person” in the Fourteenth Amendment, cited other "postnatal" uses of "person" in other corners of the Constitution, and then referred to its own historical review of 19th Century abortion laws — all of which "persuade[d]” the Court to believe "that the word ‘person,’ as used in the Fourteenth Amendment,- does not include the unborn." 410 U.S. at 158. Yet even in the midst of this constitutional misdirection, the Roe Court conceded that if the unborn child’s "person-hood is established, the appellant’s case, of course, collapses, for the fetus' right to life would then be guaranteed specifically by the [Fourteenth] Amendment.” Id. at 156-57. Thus, the very opinion in which the "right” to abortion was judicially created also left open the possibility that if an unborn child’s per-sonhood is established, he or she must be equally protected under law. See id. at 157 n. 54 (noting Texas's dilemma in arguing for fetal personhood because the state did not equally protect born and unborn life: “Neither in Texas nor in any other State are all abortions prohibited. Despite broad proscription, an exception always exists."). Although personhood amendments and statutes have been proposed in many states (including Alabama), and voted on in a few, none have become law.